Ethel M. Maclaskey, Appellant, v. Newell Mecartney
and William Kurz, Appellees.

Gen. No. 42,913.

Opinion filed December 19, 1944. Rehearing denied January 3, 1945. Released for publication January 4, 1945.

SAMUEL BARTH, of Chicago, for appellant.

JAMES A. MAHONEY, of Chicago, for certain appellee; Newell Mecartney, *pro se.*

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendants for damages alleged to have been sustained by her because of certain acts committed by defendants pursuant to a conspiracy to libel her, to ruin her reputation as an individual and as a court reporter, and to deprive her of a livelihood. The case was tried before the court and a jury and at the conclusion of plaintiff's evidence, upon defendants' motion, the jury were directed to find a verdict for defendants as to the libel charges. Plaintiff appeals from a judgment entered upon the verdict. Plaintiff also sued defendants for certain sums alleged to be due her for services rendered to them as a court reporter, but there was no appeal taken from the judgment entered as to that claim.

The complaint alleges that on June 24, 1940, and for twenty-five years prior thereto plaintiff had been a resident of Chicago and during all of that period she was a law abiding citizen, and maintained and enjoyed a good reputation for honesty, integrity and respectability, and for being a good, moral woman, and that she had never been charged with, or suspected of, being dishonest, or of obtaining money by fraudulent practices,

or having committed adultery; that during that period she maintained the reputation of being a competent court reporter and public stenographer and of conducting her business in a legitimate manner; that on said date defendant Mecartney (hereinafter called Mecartney) was indebted to plaintiff in the sum of $522 for services rendered to him by her as a court reporter, and defendant Kurz (hereinafter called Kurz) was indebted to her for a balance of $207.70 for like services rendered to him by plaintiff; that on said date defendants wilfully and wantonly combined and conspired to insult, threaten and intimidate plaintiff and to defame and libel her by making attacks against her character, and to deprive her of a livelihood by circulating the charge that she was incompetent as a court reporter, that she was dishonest and had obtained money by false pretenses, that she had swindled Kurz out of more than one thousand dollars, and that she was an immoral and licentious person, all for the purpose of intimidating her from instituting suits to enforce collection of said sums due her from defendants; that defendants further conspired that if plaintiff instituted suit against either of them, to make low, base and despicable attacks against her character in the suit, that were irrelevant and immaterial to the issues, and to make false and irrelevant charges that she had swindled Kurz out of a large sum of money, that she was incompetent as a court reporter and was a dissolute and licentious person, all with the intent and purpose to cause her to sustain great mental pain and anguish and to intimidate her from pressing her claims; that on said date plaintiff retained an attorney to collect her claim against Kurz and that attorney sent a communication to Kurz requesting payment of the amount due her from him, and on July 1, 1940, Mecartney, pursuant to the conspiracy, and with the knowledge, aid and approval of Kurz, sent a letter to her attorney which contained, *inter alia,* the following false

statements: "Mrs. Maclaskey had several months in which to do this work but held me up until the last minute, and then instead of giving it to me, she turned it over to Mr. Mulks. She then told me that I could either sign a receipt in full to Mr. Mulks or pay her $43.00. I paid her the $43.00; however, I received the record too late to do any good. The transcript, itself, showed such gross incompetency as to bar Mrs. Maclaskey from ever again reporting any case. As a lawyer imagine a court reporter making up a record reading as follows: 'Trial had. Judgment for the plaintiff.' Yet, this is the record that this woman wrote up and made me pay for it, before I could see it, and the worst part about it is that no trial was ever had. Who ever heard of a reporter who was employed to take a case simply reporting that a trial was had, instead of what was said?"; that plaintiff, on August 5, 1940, through her attorney, instituted suit against Kurz, on her said claim, in the Municipal court of Chicago, which cause is entitled *Maclaskey v. Kurz,* No. 4109599; that plaintiff filed therein a statement of claim in which she stated that Kurz had employed her in 1937, and that she then began to render services to him as a court reporter and that there was a balance due her from him of $207.70; that on August 26, 1940, Mecartney, wilfully, wantonly and maliciously, pursuant to said conspiracy, with the knowledge, aid and approval of Kurz, filed in said cause an affidavit of defense in which it was stated, *inter alia,* that plaintiff and one Harold O. Mulks had entered into an agreement with Kurz in reference to a matter in which he was sued, entitled *Pfeil v. Kurz,* to relieve "this defendant of all costs and expenses and handle the matter for their own personal benefit and profit," and in which it was also stated: "10: The said Mulks and Maclaskey induced and inveigled the said defendant to invest large sums of money with them and to go out and obtain money from his friends to also invest; that the said defend-

ant paid over to the said Mulks and Maclaskey, as aforesaid, more than $1000.00; and that the said plaintiff, Maclaskey, received the majority of the said amount, and that an accounting between the said Maclaskey and this defendant would show that the said Maclaskey is indebted to the defendant in the sum of more than $1000.00;'' that said statements were immaterial to the issues; that no counterclaim was filed and that defendants knew that said statements were irrelevant and immaterial at said time; that in September, 1940, Mecartney, pursuant to said conspiracy, and with the knowledge and approval of Kurz, filed in said proceeding in the Municipal court a pleading labeled ''Demand to Admit Facts,'' containing certain false insinuations and in which a demand was made upon plaintiff to admit the following: ''1. That the plaintiff is incompetent as a court reporter. 2. That the plaintiff's incompetency is shown by the following facts: that on or about June, 1939, the said plaintiff personally appeared as a court reporter in case No. 33989 in the Municipal Court of Evanston, Illinois, to report the proceedings, and that the said plaintiff was ordered to transcribe the same; that instead of transcribing the statements of Court and counsel, the plaintiff merely set forth an improper and false conclusion to the effect that a trial was had, when as a matter of fact there was no trial had at such time and place. 3. That the plaintiff and the said Harold O. Mulks were closely associated together in financial matters. 4. That the said Harold O. Mulks would make agreements with his clients that he would take care of all reporting costs, and then have the plaintiff put in a lot of purported work which in one case amounted to over $500.00; and then the plaintiff would try to collect from the client. 5. That as part of the business arrangements or dealings between the plaintiff and the said Harold O. Mulks were such that the plaintiff would use the necessity of the party desiring a record to attempt to ob-

tain releases of claims against the said Harold O. Mulks or force the payment of money. 6. That the plaintiff received cash and checks from the defendant on various investments and accounts, which cash and checks the plaintiff placed in a bank under her own name; and that several payments on account of such investments were paid to the defendant by the said plaintiff out of the said bank.'' The complaint then alleges that said matters were irrelevant and immaterial to the issues in said cause and were known by defendants at said time to be immaterial; that in February, 1941, Mecartney, pursuant to said conspiracy, and with the knowledge, aid and approval of Kurz, sent, through the United States mail, to the attorney for plaintiff, and also presented to one of the judges of the Municipal court, a pleading labeled, ''Interrogatories Propounded to the Plaintiff,'' which contained, *inter alia,* the false insinuation that plaintiff had been guilty of adultery with one Harold O. Mulks, and also the following: ''26. State all relationships you had with the said Mulks during all of the time he was attorney for the defendant herein. 27. When did you first meet the said Mulks? 28. Did the said Mulks represent you in any fiduciary capacity during the time that you allege that you were performing services for the said defendant herein, if so, in what capacity? 29. Did you handle any funds for the said Mulks during said time? 30. Did you have title to any real estate, during said time, in which the said Mulks was interested; if so, what property was it and in what name was the same held? 31. What bank accounts did you have, during said time, that said Mulks was interested in? 32. Was the said Mulks living in the same household or premises as you were during any part of said time? 33. In whose name was the lease of the premises in which you and said Mulks resided? 34. In whose name was the telephone, gas, and electric light in such premises at such time? 35. What was Mulks'

status in said premises, during said time; that is, was he the landlord, a roomer, a boarder, or both? 36. What financial arrangement was there, if any, between you and the said Mulks concerning payment for the upkeep of such premises including food, rent and public utilities? 37. Did the said Mulks owe you any money during the times mentioned in said statement of claim?''; that said interrogatories were immaterial to the issues and known to be immaterial by defendants at said time; that plaintiff filed in said Municipal court proceeding an affidavit in support of a motion for a summary judgment, and an order was entered directing Kurz to file a counter affidavit thereto, and on May 7, 1941, Mecartney, pursuant to said conspiracy, and with the knowledge, aid and approval of Kurz, filed in said cause a document containing, *inter alia*, the following false statements: ''That in addition to said matter, the said Maclaskey and Mulks, operated a fraud upon this defendant. That the said Maclaskey and Mulks, inveigled this defendant to execute a lease, for the use of said Mulks and Maclaskey, or one of them, and that the said Maclaskey, paid the first month's rent by a check to the said Kurz, and that said Kurz, issued his own check to the landlord;'' that all the statements contained in said document were irrelevant and immaterial, and were completely false and untrue and known by defendants to be false and untrue when the same were made, and that all said statements and charges were made for the purpose of making an attack upon the character of plaintiff and to deprive her of a livelihood, and to intimidate her from enforcing her just demands; that by reason of said acts of defendants plaintiff sustained great mental pain and suffering and was prevented from engaging in her business of court reporting; that her reputation for being an honest and upright person was greatly harmed and injured, and that many persons had been caused to believe that she was dishonest, incompetent

as a court reporter, and an immoral and licentious person, and she had been deprived of a livelihood thereby and had sustained damages to the sum of $25,000. Plaintiff prays that judgment be entered in her favor for $25,000 compensatory damages and $15,000 punitive damages, that it be found that malice was the gist of the action, and that an execution issue against the bodies of defendants.

In defendants' answer, verified by Mecartney, they deny the allegations relating to the conspiracy charges; they admit the receipt of the letter from Barrett and that Mecartney sent the letter in question to Barrett in reply thereto; they assert that said Mecartney letter was privileged and that any action thereon is barred by the statute of limitations; they admit that plaintiff filed the action in the Municipal court and that they may have filed the pleadings and records in question in said action, "but reserve the right of checking the same;" they claim that all of the pleadings filed in the Municipal court case on behalf of Kurz "are privileged;" and allege that said case is now pending in the Appellate court, First District.

Plaintiff's replication to defendants' answer denies that her action as to the letter from Mecartney to Attorney Barrett was barred by the statute of limitations and further denies that the pleadings filed on behalf of Kurz in the Municipal court were privileged.

Upon the trial plaintiff introduced in evidence the letter from Mecartney to plaintiff's attorney, Barrett; also the pleadings that were filed in the Municipal court proceeding and that are referred to in the instant complaint. A number of witnesses, called by plaintiff, testified that they had known her for many years and that her reputation as a citizen and as a court reporter was excellent. Plaintiff, in her testimony, denied all of the charges, insinuations and intimations that were made in the letter and pleadings of which she makes complaint. Plaintiff called Mecart-

ney as a witness under Section 60 of the Civil Practice Act [Ill. Rev. Stat. 1943, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060] and he was shown the "Demand to Admit Facts" and was asked if he caused it to be served upon plaintiff's attorney in the Municipal court proceeding, to which he answered, "I don't remember anything about it." The witness was then shown the pleading and asked if it bore his signature, to which he answered, "Well, now, it looks like it." The court then asked the witness, "Is it?" to which the witness answered, "I don't know, your Honor. It may be." The witness admitted that he dictated the letter that was sent to Attorney Barrett. He was then asked if Kurz asked him to send the letter, to which he answered, "I would say the letter speaks for itself. I sent it on, but as to any question between Mr. Kurz and myself, I must claim the relationship of attorney and client and that is confidential. I have not been released from that confidence." The record shows that Kurz then "stood on his privileges." The witness Mecartney was then asked, "What was your object in asking those questions, propounding those interrogatories [referring to the document labeled, 'Interrogatories Propounded to the Plaintiff,' . . . ]?" Mecartney objected to the question and the court ruled: "I cannot see any basis for a ground of action on those interrogatories. They are merely questions. Even if they were improper, they were not statements of fact. I don't know how slander or libel can be based on a query. I will sustain the objection." Shortly thereafter the trial court, upon the motion of Mecartney, excluded the pleading. Mecartney further testified that the judgment plaintiff obtained against Kurz in the Municipal court proceeding was later affirmed by this court.

Newell Mecartney, a practicing lawyer at the Chicago bar for many years, has not seen fit to file a brief in this cause. In a very short brief filed on behalf of Kurz the following appears: "The strongest com-

plaint against William Kurz is that he aided and abetted Newell Mecartney *who libeled and slandered Ethel M. Maclaskey*. . . . Nowhere during the trial was there any evidence or testimony introduced to prove that Newell Mecartney did or did not act within the scope of his authority. This is a question of fact and can only be decided by the facts as presented in the trial. There is nothing in the record of the lower court to show whether or not any acts of Newell Mecartney were or were not within the scope of his authority." (Italics ours.) The only other point made in the argument in the Kurz brief is that "plaintiff did not prove that any single document offered in evidence was ever published or even filed in the Municipal Court of Chicago." In making this point counsel for Kurz ignores the pleadings and the evidence. The complaint charges that the pleadings were filed in the Municipal court and that the letter to plaintiff's attorney was mailed by Mecartney on July 1, 1940. Mecartney, in his testimony, admitted writing the letter. Defendants, in their joint answer, did not deny that the pleadings were filed in the Municipal court—indeed, they stated in their answer that they "may have" filed them. The charges in the complaint that were not specifically denied stand admitted. (Sec. 40, Civil Practice Act [Ill. Rev. Stats. 1943, ch. 110, par. 164; Jones Ill. Stats. Ann. 104.040] ; *Standard, Inc. v. Kirby,* 319 Ill. App. 206, 209; *Peters v. Peters,* 376 Ill. 237, 240.)

Plaintiff's counsel has filed an able and forceful argument in support of the contention that the trial court erred in directing a verdict for defendants and that the instant judgment should be reversed and the cause remanded for a new trial, but neither defendant has seen fit to answer the material and important points made in plaintiff's brief.

Plaintiff contends: "I. False and defamatory statements, made in a pleading filed in a judicial proceeding, that are immaterial to the issues, and that are made

without an honest belief that they are relevant and material, are not privileged, but actionable. II. In an action for libel based upon false and defamatory statements made in a pleading or affidavit, that is filed in a judicial proceeding, and that are immaterial and irrelevant to the issues; a *prima facie* case is made sufficient to warrant the submission of the case to the jury, when it is shown that the statements are irrelevant and immaterial to the issues; and, the question, whether or not the defendant honestly believed that the statements were relevant and material, is not one of law for the court, but one of fact for the jury." The law stated in point I is well established.

In *McLaughlin v. Cowley,* 127 Mass. 316, 319, the court states:

"It was stated in the opinion of this court in the recent case of *Rice v. Coolidge,* 121 Mass. 393, that it seems to be settled by the English authorities that judges, counsel, parties and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings; and that the same doctrine is generally held in the American courts, with the qualification, as to parties, counsel and witnesses, that their statements made in the course of an action must be pertinent and material to the case. The doctrine thus qualified was set forth by SHAW, C. J., in an elaborate opinion, in *Hoar v. Wood,* 3 Met. 193. The qualification of the English rule is adopted in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice."

In *Sherwood v. Powell,* 61 Minn. 479, the court states (p. 481):

"It seems to be well established in the English courts that counsel, parties, and witnesses are given free rein in pending litigation, and are absolutely exempted from liability to an action for defamatory

words spoken or published of a party in the course of legal proceedings. A rule which tolerates and encourages gratuitous, immaterial, and malicious attacks upon a litigant, and excuses and justifies them, simply affords an opportunity for evil-disposed persons to vilify and calumniate, under the guise of an honest effort to secure the proper administration of justice. The doctrine which prevails abroad has not commended itself to the judiciary of this country, and it has been qualified by the American courts so that statements, verbal or written, made in the course of judicial proceedings, must at least be pertinent and material to the case, to be privileged. *Hoar v. Wood,* 3 Metc. (Mass.) 193. This qualified rule was subsequently approved in *Rice v. Coolidge,* 121 Mass. 393; *McLaughlin v. Cowley,* 127 Mass. 316. See, also, *White v. Nichols,* 3 How. 266; *Gilbert v. People,* 1 Denio, 41; *Hyde v. McCabe,* 100 Mo. 412, 13 S. W. 875; *Whitney v. Allen,* 62 Ill. 472.'' (See, also, *Burdette v. Argile,* 94 Ill. App. 171, 175.) Many other cases to the same effect might be cited.

That plaintiff states the law correctly in point II, see *Burdette v. Argile, supra; White v. Carroll,* 42 N. Y. 161; *Moore v. Manufacturers' Nat. Bank of Troy,* 123 N. Y. 420.

It is important to note that no counterclaim was filed on behalf of Kurz in the Municipal court proceeding and that plaintiff's suit involved a simple claim for an unpaid balance of $207.70 alleged to be due her from Kurz on account of court reporting services rendered by her to him. The pleadings in question in the Municipal court proceeding were filed by an experienced lawyer. In the instant proceeding the joint plea of defendants is that all of the pleadings filed in the Municipal court proceeding were privileged. Defendants did not plead that the charges contained in the pleadings filed in the Municipal court proceeding were relevant or material to the issues in that proceeding, nor did

they even plead that they believed them to be relevant and material when they were filed, nor did they offer any evidence to prove that the charges were relevant. If defendants, in good faith, believed that the charges were material and pertinent to the issues, such a defense would be an affirmative one, to be established by evidence. (See *Burdette v. Argile, supra,* at p. 177.)

As to the letter sent by Mecartney to Attorney Barrett: The undisputed evidence shows that plaintiff was a competent court stenographer, with long years of practice and experience in her profession. A false statement that a party is incompetent in the business, calling or profession in which he is engaged is actionable even without proof of special damages. (36 C. J. sec. 69, p. 1180.) In passing upon the admissibility of this letter, the trial court did not hold that the letter was not libelous: he held that the statute of limitations barred any claim based upon that letter. The complaint alleges that all of the alleged libelous acts were committed pursuant to a conspiracy formed by defendants. The statute of limitations did not commence to run against any of the alleged libelous acts until the commission of the last overt act done in pursuance of the conspiracy, and, therefore, the trial court, in our judgment, erred in his ruling.

As to the pleading labeled, "Demand to Admit Facts": In passing upon the competency of this pleading the trial court stated that it was a new procedure; that "They are, in effect, questions stated as such; although they are stated in the form of an affirmative statement, they are limited solely to the case in which they are filed and have no effect elsewhere," and "I do not see how they differ materially from questions which might be propounded to a witness on the stand, and that brings up a serious question of public policy, if a lawyer should be subjected to the hazard of civil suits because he propounded questions to a witness on the stand which questions implied that the witness might

be guilty of a crime or fraudulent conduct or immoral conduct,—it might interfere very seriously with the proper examination of witnesses. . . ." The pleading does not purport to put questions to plaintiff, and we cannot agree with the trial court that the positive statements in the pleading should be treated as in the nature of questions that might be propounded to a witness upon the stand. The plain purpose of the statements in that pleading was to make direct and serious charges against plaintiff and to demand that she admit the truth of the charges contained in the statements. The trial court also erred in holding that a libel could not be predicated upon statements put in the form of questions. In 33 Am. Jur. 43 (Libel and Slander, Sec. 9), the author states: "A mere insinuation is as actionable as a positive assertion, if the meaning is plain. Thus, it has been held repeatedly that the putting of the words in the form of a question will in no wise reduce the liability of the defendant." "Positive assertion of a charge is not necessary to constitute a writing libelous; they may be made in the form of insinuation, allusion, irony or questions, and the matter will be as defamatory as if asserted in positive and direct terms." (*Wofford v. Meeks*, 129 Ala. 349, 357.) "The charge need not be direct or positive. 'A mere expression of opinion or of a suspicion may be actionable. . . . A mere insinuation is as actionable as a positive assertion, if the meaning is plain, and it has been held repeatedly that the putting of the words in the form of a question will in no wise reduce the liability of the defendant.' 17 Ruling Case Law, 314, 315, Section 55." (*Schoedler v. Gauge & E. Co.*, 134 Ohio St. 78, 85.) "A man cannot libel another, by the publication of language, the meaning and damaging effect of which is clear to all men, and where the identity of the person meant cannot be doubted, and then escape liability through the use of a question mark." (*Spencer v. Minnick*, 139 Pac. (Okl.) 130, 132.) In

*Goodrich v. Davis,* 52 Mass. 473, where the alleged libels were in the form of interrogations, the court said (p. 482) : "The form is interrogative; but that renders it none the less libelous, if the meaning and purpose of the author be to convey the same idea that would have been communicated by a direct imputation." In *Ward v. Merriam,* 193 Mass. 135, the alleged slanderous words were (p. 136) : "Ward (meaning plaintiff's husband) has sold half of his wife to Legeyt (meaning Warren Legeyt) hasn't he?" In holding that a jury would be warranted in finding that the words amounted to a charge of adultery, the court stated (p. 138) : "It is of no consequence that the statement was put in the form of a question. Insidious and harmful insinuations may often be conveyed under the cover of an inquiry." (See, also, 17 R. C. L. 315.)

As to the pleading labeled, "Interrogatories Propounded to the Plaintiff": The law that we have just cited applies with special force to that pleading and it should not have been excluded upon the theory adopted by the trial court, that a libel could not be predicated upon questions. The trial court was also of the opinion that the "Interrogatories Propounded" were competent as tending to show the interest and the relationship between the parties. The plain purpose of the interrogatories was to insinuate that plaintiff had been guilty of adultery with one Mulks. We cannot imagine how such a fact could be competent in the simple suit filed by plaintiff against Kurz, especially in view of the fact that no counterclaim was filed. *A fortiori,* the joint plea of defendants did not allege that the statements made in any of the pleadings filed in the Municipal court proceeding were relevant to the issues in the cause.

As to the charge contained in the affidavit of defense, that "the said Mulks and Maclaskey induced and inveigled the said defendant to invest large sums of money with them and to go out and obtain money

from his friends to also invest,'' which the trial court held was pertinent and material to the issues and therefore privileged, it seems clear to us, especially in view of the fact that no counterclaim was filed, that evidence to sustain such a charge could not be relevant in the Municipal court proceeding. The statement complained of amounts to this, that Mulks and plaintiff *by deceitful methods* induced Kurz to invest large sums of money with them and to go out and obtain money from his friends to invest with Mulks and plaintiff.

As the complaint in the instant proceeding charges that all of the alleged libelous acts were committed in pursuance of a conspiracy, the trial court and the jury, in determining the purpose and intent of each of the alleged libels, would have the right to consider all of the alleged libels as well as all of the other facts and circumstances, in evidence, that bear upon the alleged conspiracy. A complaint charging a conspiracy to slander or libel the complainant is not a novel procedure. The slander uttered or the libel written in pursuance of such a conspiracy is aggravated by the fact that it is uttered or written in pursuance of a conspiracy.

The defense interposed by Kurz in this court, that there is no evidence to prove that Mecartney, in writing the letter to Barrett and in filing the pleadings in the Municipal court proceeding, acted within the scope of his authority as the attorney for Kurz, is clearly an afterthought, as no such defense was asserted in the trial court. When the instant complaint was filed, it apprised Kurz that he was charged with being a party to the conspiracy alleged in the complaint, nevertheless, he retained Mecartney to represent him in the instant proceeding. Kurz did not see fit to file a separate answer asserting that the various acts committed by Mecartney were not authorized by him. On the contrary, he permitted Mecartney to file a joint answer

that alleged that the letter to Barrett and all the pleadings filed in the Municipal court proceeding were privileged.

"The law charges parties to a suit with notice of the contents of pleadings filed in their behalf, and presumes that they knew and understood same. *Linn v. Clark,* 295 Ill. 22; *Ranken v. Probey,* 120 N. Y. S. 413; *Coward v. Clanton,* 79 Cal. 23, 21 Pac. 359. They have a right, however, to show that, as a matter of fact, the particular pleading was not authorized by them." (*Smith v. Fidelity Trust Co.,* 281 Ill. App. 488, 493.)

Neither by pleading nor proof did Kurz attempt to show that the acts of Mecartney were not authorized by him. Throughout the trial the defendants acted in concert in the matter of defense. When plaintiff sought to interrogate Mecartney as to the connection of Kurz with the sending of the letter to Barrett and the filing of the pleadings, Kurz "stood upon his privileges." We are satisfied that the pleadings and the evidence, together with the legal presumption that he knew of the filing of the pleadings and understood the nature of them, made out a *prima facie* case that Kurz was a party to the alleged conspiracy.

Holding as we do, that the trial court erred in directing a verdict for defendants, the judgment of the Superior court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed, and cause remanded for a new trial.*

Sullivan, P. J., and Friend, J., concur.