[Civ. No. 13739. First Dist., Div. One. Feb. 14, 1949.]

DOMENICO MERLINO, Appellant, v. WEST COAST MAC-
ARONI MANUFACTURING COMPANY (a Corpora-
tion) et al., Respondents.

Morgan J. Doyle and A. Dal Thomson for Appellant.

Matt Goldstein and Lionel B. Benas for Respondents.

PETERS, P. J.—Defendants demurred generally and specially to plaintiff's first amended complaint. The trial court sustained the demurrer, and granted plaintiff 10 days to amend.

Plaintiff failed to amend, and judgment was entered for defendants. Plaintiff appeals.

The law applicable to such an appeal is well settled. "A plaintiff who has declined to amend his complaint, after a demurrer sustained, which is both general and special, must stand upon his pleading as against both grounds of demurrer." (*Aalwyn* v. *Cobe*, 168 Cal. 165, 173 [142 P. 79] ; see, also, *California Trust Co.* v. *Cohn*, 214 Cal. 619 [7 P.2d 297] ; *Blumen* v. *Clayburgh*, 10 Cal.App.2d 63 [51 P.2d 102] ; *Craig* v. *City of Los Angeles*, 44 Cal.App.2d 71 [111 P.2d 977].) This does not mean, however, that every ambiguity in a complaint will justify a trial court in sustaining a special demurrer. ▪ A demurrer for uncertainty will not lie where the ambiguous facts alleged are presumptively within the knowledge of the demurring party. (*Corum* v. *Hartford Acc. & Ind. Co.*, 67 Cal.App.2d 891 [155 P.2d 710] ; *Swasey* v. *de L'Etanche*, 17 Cal.App.2d 713 [62 P.2d 753].) ▪ A special demurrer should not be sustained if the allegations are sufficiently clear to apprise the defendant of the issues that must be met, even if the allegations of the complaint may not be as clear and as detailed as might be desired. (*People* v. *Lim*, 18 Cal.2d 872 [118 P.2d 472].) ▪ Moreover, a demurrer for uncertainty will not lie as to even uncertain and ambiguous allegations, if such allegations refer to immaterial matters. In such event, they will be treated as surplusage and disregarded. *Swasey* v. *de L'Etanche, supra*; *Aronson* v. *Bank of America*, 42 Cal.App. 2d 710 [109 P.2d 1001] ; *Penziner* v. *West American Finance Co.*, 133 Cal.App. 578 [24 P.2d 501].) Tested by these standards, we think it was error to have sustained the demurrer.

The complaint alleges that the West Coast Macaroni Manufacturing Company is a California corporation, incorporated in 1929 as a wholly-owned subsidiary of the Fresno Macaroni Manufacturing Company, a corporation; that the Fresno Company owns 800 of the 804 issued capital stock of the West Coast Company, the other four shares being owned one share each by the plaintiff, his wife, defendant Borrelli and by his wife; that from December 20, 1934, to April 13, 1945, the Fresno Company had a total of 675 outstanding shares; that plaintiff and defendant Borrelli each owned 336½ shares and each of their wives owned one share; that on April 13, 1945, plaintiff and his wife transferred all of their shares in the Fresno Company to Borrelli pursuant to a court decree in Fresno County; that such decree was rendered in a dissolution proceeding instituted by plaintiff against the Fresno Company; that in that

action the court decreed that plaintiff and his wife were obligated to transfer their stock in the Fresno Company by virtue of an option owned by Borrelli and his wife; that during all times here involved Borrelli was president and a director of the Fresno Company, his wife was vice-president and director, plaintiff was secretary-treasurer and a director, and his wife was a director; that during all times here involved Borrelli was president and a director of West Coast Company, plaintiff was secretary-treasurer and a director, and his wife was vice-president and a director; that the articles of incorporation of the West Coast Company, and by-laws, provided for four directors, but only three were elected during all times here involved; that at all times here involved the affairs of the Fresno Company and the West Coast Company have been conducted as a partnership between plaintiff and defendant Borrelli; that dividends have not customarily been declared, but, up until plaintiff was ousted, it was the custom of plaintiff and defendant Borrelli to divide a substantial portion of the earnings of both corporations between themselves as payment of salaries; that when the West Coast Company was incorporated it was orally agreed between plaintiff and defendant Borrelli that so long as plaintiff owned 50 per cent of the stock of the Fresno Company, he would be in active control and would manage the West Coast Company, and would assist defendant in the management of the Fresno Company; that this agreement continued in full force and effect with the modification hereinafter alleged until breached by defendant Borrelli; that plaintiff fully performed all the terms of the agreement and the modification thereto up to the time the agreement was breached; that at the beginning of 1940 the parties modified the agreement to provide that each was to draw $9,000 a year from the consolidated enterprises as long as each should continue to own 50 per cent of the stock of the Fresno Company; that on April 12, 1944, defendant Borrelli called a special meeting of the directors of the Fresno Company; that all four directors were present at the meeting; that Theresa Borrelli introduced, and defendant Borrelli seconded, a resolution purporting to authorize defendant Borrelli to vote the shares of the West Coast Company owned by the Fresno Company; that the two Borrellis voted in favor of the resolution, but plaintiff and his wife voted against it; that in spite of the fact that the vote was a tie vote, defendant Borrelli refused to recognize the vote of the wife of plaintiff

as a director, and declared the resolution carried by a two-to-one vote; that the by-laws of the Fresno Company had no provision authorizing any officer of the company, or any other person, to vote the stock owned by the corporation; that on November 10, 1944, a special meeting of the stockholders of the West Coast Company was called by defendant Borrelli for the purpose of electing four directors of the West Coast Company; that there were present at this meeting the holders of only four shares of stock in the West Coast Company, namely, defendant Borrelli (1) share, Theresa Borrelli (1) share, Anastasia Merlino (1) share, and plaintiff, by his proxy A. Dal Thomson, (1) share; that the by-laws of the West Coast Company required the presence of a majority of the stock to constitute a quorum, and if such quorum was not present at a stockholders' meeting, a majority of those present could adjourn the meeting; that at this meeting Anastasia Merlino moved that the meeting be adjourned upon the ground that no quorum was present, the motion being seconded by the proxy for plaintiff; that when this motion was put to a vote, the two Borrellis voted against it, and then, against the objection of the proxy, assumed to vote the shares of stock owned by the Fresno Company in the West Coast Company under authority of the resolution described above; that defendant Borrelli then announced that the motion to adjourn had been defeated; that Borrelli and his wife, by the device of voting the stock of the West Coast Company owned by the Fresno Company, attempted to nominate and elect four directors of the West Coast Company, namely, defendant Borrelli, his wife, Julius Di Donato and Domenico Germino, the last three being mere dummies used to carry out defendant Borrelli's plan of ousting plaintiff from the managership of the West Coast Company and from his participation in the earnings of the corporation; that at this meeting a person in police uniform and a supposed private detective were present, by previous arrangement effected by Borrelli and his attorneys; that during the meeting, these persons stood about in a menacing and threatening attitude. It is then alleged, on information and belief, that the four persons claiming to have been elected as directors then adjourned to another room where it was voted to oust plaintiff from the management of the West Coast Company; that after this meeting the usurping board of directors caused the locks of the premises of the West Coast Company to be changed and defendant Borrelli, with force and violence, seized possession of the plant to the

exclusion of plaintiff and continued to do so until plaintiff transferred his stock by order of court on April 13, 1945, above mentioned; that plaintiff ever since his ouster has reported for work at regular intervals but was denied access to the plant by the pretended directors. In the concluding paragraph of the complaint it is alleged that no part of the salary due and owing to plaintiff from November 1, 1944, to and including the month of April, 1945, has been paid, and the whole therefore in the sum of $4,500 is now due and payable. The prayer is for judgment in that amount.

As already indicated, defendants demurred both generally and specially. So far as the general demurrer is concerned, the complaint states a cause of action. There can be no question but that an agreement between stockholders who own substantially all of the stock of a corporation is enforceable against the contracting parties and the corporation. (*Conover v. Smith,* 83 Cal.App. 227 [256 P. 835]; see cases collected and commented upon 6A Cal.Jur. § 28, p. 89; 18 C.J.S. § 497, p. 1175; 18 C.J.S. § 533, p. 1218.) That is exactly the type of action here pleaded. The terms of the agreement between the parties are clearly set forth in paragraphs VIII and IX of the complaint. In paragraph VIII appears the following allegation: "At the time of the organization and incorporation of West Coast, it was orally agreed between plaintiff and defendant Borrelli that plaintiff would be and remain, throughout the period of his fifty per cent of stock ownership in the Fresno Company, in active management and control of the plant of West Coast at Oakland, and that the plaintiff would assist said Borrelli, by periodic trips to Fresno, in the management of the Fresno Company. Said agreement remained in full force and effect up to the time of its breach, as hereinafter alleged. Plaintiff fully performed all of the terms, covenants and conditions of said agreement and said modification thereof up to the time of said breach."

Paragraph IX reads as follows: "In further carrying out said arrangement mentioned heretofore in paragraph VIII hereof and at the beginning of the year 1940, plaintiff and defendant Borrelli orally agreed that each was to draw from the consolidated enterprises the sum of Nine Thousand Dollars ($9,000) per annum as and for salary, so long as each continued to own substantially fifty per cent of the stock of the consolidated enterprises." The breach of this agreement is set forth in paragraphs X, XI, XIII, XIV, XIX, XX and

XXI. The complaint alleges, therefore, an agreement for the division of profits between the two owners of substantially all of the stock of both corporations, and the breach of that agreement. ■ While the prayer for relief asks for the recovery of "salary," and while, if that were the basis of the action pleaded, that might constitute an attempt to secure the specific enforcement of an employment contract in violation of section 3390(2) of the Civil Code, the prayer for relief is no part of the statement of the cause of action, and should, where necessary, be disregarded. (*Sullivan* v. *Compton,* 61 Cal.App. 2d 500 [143 P.2d 357].) ■ Here the gravamen of the action is the breach of the alleged agreement to divide profits, and all elements of that cause of action have been pleaded. The pleaded agreement was that such profits should be divided as long as plaintiff should remain manager of the West Coast Company, it being alleged that Borrelli agreed that plaintiff should continue as manager of that company as long as he held 50 per cent of the stock of the Fresno Company. It is also alleged that Borrelli violated that agreement by appointing another person as manager while plaintiff still owned a one-half interest in the Fresno Company. This was done by the device of voting the stock owned by the Fresno Company in the West Coast Company. Even if it be assumed that, in the absence of an agreement to the contrary, a majority of the directors present at a meeting attended by a quorum may vote stock owned by the company, in this case, according to the allegations of the complaint, this was done in violation of a contract between plaintiff and defendant Borrelli. For these reasons the complaint clearly states a cause of action. Defendants make no serious contention to the contrary.

■ Nor is the complaint uncertain or unintelligible. While the language used is not as precise as might be desired, we have had no serious difficulty in ascertaining what plaintiff was attempting to allege. These facts should have been even clearer to defendant Borrelli, who was familiar with the entire situation.

Among other things, defendants urge that it cannot be ascertained whether plaintiff bases his cause of action upon the partnership agreement referred to in paragraphs VIII and IX, or upon a claim for salary for services rendered the West Coast Company as manager. It is also contended that it is impossible to ascertain whether plaintiff relies upon the existence of a partnership, or an attempt to create a partnership, or whether such partnership agreement was oral or

written. We find no such difficulty with the pleading. There is no allegation of a partnership. Whether a partnership did or did not exist is not an issue in this case. The allegation is simply that the affairs of the two companies, owned wholly by plaintiff, defendant Borrelli and their wives, "have been conducted as a partnership." This is followed by the allegation that it was orally agreed that plaintiff and defendant Borrelli should each draw from the "consolidated enterprises" $9,000 a year as salary as long as each owned substantially 50 per cent of the stock of the consolidated enterprises. The action is based upon that agreement and the breach of that agreement. The "salary" was part of the agreement. The money was to come from the earnings of the two companies. There is no uncertainty in these allegations.

Defendants claim to be confused by plaintiff's use of the words "consolidated enterprises," contending that the complaint fails to designate the enterprises that are claimed to have been consolidated. The allegation in paragraph VIII that the affairs of the two named corporations were conducted by plaintiff and defendant Borrelli as a partnership, clearly and without ambiguity explains the phrase "consolidated enterprises" as used in paragraph IX.

Defendants contend that they are unable to ascertain what plaintiff intended to convey by the allegation that the original agreement was modified. After alleging the terms of the agreement forming the basis of this action, plaintiff, in the last sentence of paragraph VIII, alleges: "Plaintiff fully performed all of the terms, covenants and conditions of said agreement and said modification thereof up to the time of said breach." This allegation is immediately followed by the allegations contained in paragraph IX and above quoted. There it was alleged that in 1940 the two contracting parties agreed to draw yearly $9,000 each as salary from the two enterprises. This is the modification referred to in paragraph VIII.

The other contentions that the complaint is uncertain and unintelligible are so trivial as not to require comment. When the rules set forth in the first part of this opinion are applied to the facts here alleged, we have no hesitancy in holding that the complaint is not uncertain, unintelligible or ambiguous.

Defendants strenuously argue that the complaint alleges two causes of action not separately stated, and that for this reason the demurrer was properly sustained. It is contended that this was the main theory upon which the trial court sustained the demurrer. In this connection it is urged that the complaint alleges a cause of action for salary due from the West Coast Company for services as manager, and a separate and distinct cause of action for a division of profits based upon a partnership agreement. Emphasis is placed upon the allegation in paragraph XXI of the complaint to the effect that no part of the salary due and owing to plaintiff from November 1, 1944, to and including the month of April, 1945, has been paid, and to the allegation in paragraph VIII to the effect that the affairs of the two corporations have been conducted as a partnership, and that it was orally agreed between plaintiff and defendant Borrelli that each was to draw from the consolidated enterprises a salary of $9,000 a year. Great reliance is placed upon the case of *Robinson* v. *Godfrey,* 78 Cal.App. 284 [248 P. 268]. In that case the appellate court affirmed a judgment for defendant entered upon the sustaining of a demurrer. The opinion does not set forth the contents of the complaint, but it is stated that it contained a mass of detail in regard to certain claimed fraudulent acts on the part of certain defendants affecting the legal rights of a corporation and the rights of plaintiff as a stockholder, and also contained numerous allegations in reference to a cause of action against some of the defendants for a partnership accounting. In that case there were numerous causes of action jumbled together and the court held that the demurrer was properly sustained for failure of the plaintiff to allege these individual causes of action separately. The case is in point only if the present case alleges more than one cause of action. That is the very point in issue. A reading of this complaint demonstrates that plaintiff is attempting to enforce an obligation claimed to be due him as a result of an agreement between him and defendant Borrelli. It is a single agreement. There is but one primary right involved, and that is the right to receive $9,000 a year to be paid out of the combined earnings of the two corporations which were owned by plaintiff and defendant Borrelli equally. The breach of this primary right is alleged. This being so, but one cause of action has been alleged. Defendants have confused the remedy and relief sought with the cause of action alleged.

The elements of a cause of action were set forth in the frequently cited case of *Frost* v. *Witter*, 132 Cal. 421, at page 426 [64 P. 705, 84 Am.St.Rep. 53], where it is stated:

"In applying the rule, some confusion has resulted from the neglect to define the terms, 'cause of action' and 'action'; to which, therefore, our attention must be first directed.

"The latter term is very commonly confounded with the *suit* (*litis*) in which the action is enforced. But this is not the technical meaning of the term, according to which an action is simply the right or power to enforce an obligation. 'An action is nothing else than the right or power of prosecuting in a judicial proceeding *what is owed to one*,'—which is but to say, an *obligation*. . . . The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation. . . .

"The 'cause of action' is therefore to be distinguished, also, from the '*remedy*,'—which is simply the means by which the obligation or the corresponding action is effectuated,—and also from the 'relief' sought. (Pomeroy on Pleading and Practice, sec. 453.)''

This rule was elaborated upon in *McKee* v. *Dodd*, 152 Cal. 637, where, at page 641 [93 P. 854, 125 Am.St.Rep. 82, 14 L.R.A.N.S. 780], it is stated: "A cause of action, as Professor Pomeroy points out with his usual lucidity (Remedies and Remedial Rights, secs. 452 et seq.), arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term and as it is used in the codes of the several states.' ''

The fact that a plaintiff may be entitled to several species of relief for the enforcement of a single right does not mean he has more than one cause of action. If the action is brought to enforce a single right violated by defendant, the complaint states but one cause of action regardless of the number or types of relief sought. (*Big Boy Drilling Corp.* v. *Rankin*, 213 Cal. 646 [3 P.2d 13]; *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636 [134 P.2d 242]; *Hellman* v. *Los Angeles Ry. Corp.*, 135 Cal.App. 627 [27 P.2d 946, 28 P.2d 384].)

Defendants also make reference to the rule that normally partners cannot sue each other at law for the violation of a partnership agreement until there has been a final settle-

ment of the partnership affairs, but are limited to an action in equity for dissolution and an accounting. (*Dugan* v. *Forster,* 104 Cal.App. 117 [285 P. 384]; *Mosher* v. *Helfend,* 7 Cal.App.2d 48 [44 P.2d 1050]; see cases collected 20 Cal. Jur. § 70, p. 759.) This rule has no application to the present case for the reason that no partnership, in the legal sense, has been alleged. There is another complete answer to this contention. In paragraph V of the complaint it is alleged that plaintiff brought an action for dissolution against the Fresno Company, and that in that action the court decreed that plaintiff and his wife must transfer their stock in the Fresno Company to the defendant Borrelli, and that this was done, pursuant to the court order, on April 13, 1945. Thus, even if a partnership in the legal sense had existed between these parties prior to that date, it would appear that it is now dissolved. An action at law will therefore lie.

The judgment appealed from is reversed.

Ward, J., and Bray, J., concurred.