[Civ. No. 20057. Second Dist., Div. Two. June 11, 1954.]

ELIZABETH SCHESSLER, Appellant, v. WILLIAM KECK et al., Respondents.

Randolph J. Soker for Appellant.

Hanna & Morton and Harold C. Morton for Respondents.

FOX, J.—Defendants' individual demurrers to the second cause of action in plaintiff's first amended complaint were sustained without leave to amend. Their separate demurrers to the first cause of action were sustained with leave to amend within 20 days. Plaintiff appeals from the judgment of dismissal entered after she failed to further amend within that time.

Plaintiff's first cause of action alleges, so far as is here pertinent, that at all times referred to in the complaint she was an unmarried woman whose occupation, from 1946 until the present, was that "of cooking and catering in fine homes in Beverly Hills and Bel Air" in Los Angeles County. During the years 1943-1944, while plaintiff was serving with the United States Women's Army Corps, it was discovered that she had a biologic false positive type of reaction to certain blood tests for syphilis, "and the same was diagnozed as nonsyphilitic." On July 30, 1945, which was approximately the time plaintiff received an honorable discharge from military service, the Chief, Division of Serology, Army Medical Center of the Army Service Forces, Washington, D. C., issued a memorandum which stated these facts regarding plaintiff's biologic false positive (nonsyphilitic) type of reaction.* In 1946, in an attempt to eliminate this false positive type of reaction, plaintiff visited the Mayo Clinic in Rochester, Minnesota, where she underwent examinations which resulted "in the same diagnosis as nonspecific." In September, 1946, plaintiff having returned to California for treatment for the purpose of eliminating the false positive type reaction, the Mayo Clinic referred this information at plaintiff's request to Dr. Clyde O. Wood of Beverly Hills, California.

It is next alleged that on about September 23, 1946, plaintiff consulted Dr. Wood in Beverly Hills and presented to him the memorandum from the Army Medical Center previously referred to. This memorandum was clamped "to the top or front" of Dr. Wood's file or chart pertaining to plaintiff, where it remained from about September 23, 1946, to approximately the middle of 1950, a period during which plaintiff was treated in Dr. Wood's office. During 1946, 1947 and 1948, a part of plaintiff's treatment in Dr. Wood's office consisted of injections administered by a registered nurse then known as Jean Florian and now known as Jean Keck, one of the defendants herein. Jean had access to plaintiff's

---

*A copy of this memorandum was attached to the complaint and incorporated therein by reference.

file or chart. During 1946, 1947 and 1948 plaintiff discussed her case with Jean in Dr. Wood's office, and informed Jean of the false positive (nonsyphilitic) diagnoses made by the Army Medical Center and the Mayo Clinic. Plaintiff told Jean she did not have syphilis but was taking the treatments only for the purpose of trying to eliminate the false positive type reaction and requested that Jean read her medical file and particularly the Army memorandum. It is alleged that Jean "stated to plaintiff that she had read and understood the same."

In paragraph VII of her first cause of action, plaintiff alleges: "That thereafter in about August, 1948, the defendants combined and conspired by common design to defame and damage the plaintiff in the following manner, to wit: that the defendant Jean Florian was associating socially with the defendant William Keck, and visited in his home located at 283 Bel Air Road, Los Angeles, California; and that the defendant. Sallie May Ferguson was employed by the defendant William Keck as a secretary-housekeeper, and lived in said home; and that the defendant Hazel Edwards was employed by the defendant William Keck as a maid, and lived in said home, that the defendants then and there discussed the plaintiff and by common understanding, design, purpose and use of language did declare and disseminate opprobious statements of and concerning the plaintiff, to wit: that the plaintiff was being treated for syphilis in the office of Dr. Wood, and that the plaintiff should not be employed as a cook. That said statements, so made and published, imputed to plaintiff the present existence of an infectious, contagious, or loathsome disease, and imputed to plaintiff a want of chastity."

Paragraph VIII recites: "That the said statements of and concerning the plaintiff, were repeated and published by the defendants in about August, 1948, in furtherance of their common design, successively, by defendant Jean Florian to defendant, William Keck, by the defendant, William Keck, to defendant, Sallie May Ferguson, by defendant Sallie May Ferguson, to defendant, Hazel Edwards, and by the defendant, Hazel Edwards at various times and places to numerous persons, including to one Ann Storms in the winter of 1949 or spring of 1950, and to one Nell Robinson in about March of 1952, and plaintiff is informed and believes and upon such information and belief alleges that the defendants repeated and published the same to numerous other persons unknown to plaintiff but known to defendants."

Paragraph IX alleges, in part, that "the circumstances were known to the defendants and each of them at the time of the said respective publications, which gave them reason to expect repetition as above alleged, in that the defendants knew the plaintiff to be employed as a cook and cateress in Beverly Hills or Bel Air, where the defendants likewise resided or were employed; that the plaintiff and defendants knew and were 'acquainted with numerous employers, employees and others in the said vicinity of Beverly Hills and Bel Air; and that said repetition and republication was the natural and probable consequence of the respective acts of the defendants."

Plaintiff's first cause of action concludes with the allegations, among others, that the said statements were false, untrue and unprivileged and constituted slander *per se*; that they exposed plaintiff to ridicule, contempt, hatred, and social ostracism and tended directly to injure her in her trade of cooking and catering by the imputation that she was not free of an infectious or loathsome disease; and that they were the proximate cause of the special damage to plaintiff therein described.

Plaintiff's second cause of action, after repleading virtually all the allegations of the first cause of action, recites: "That whereas the defendants have imputed to plaintiff during the times above alleged the present existence of an infectious, contagious and loathsome disease, to wit: syphilis; and whereas the plaintiff alleges that she has never had and does not have the said disease, a controversy has arisen between the parties, and plaintiff desires a declaration establishing the truth of and concerning the plaintiff, that she has never had and does not now have syphilis, and that such statement and imputations to that effect, as above alleged, are false, untrue and slanderous *per se*; plaintiff seeks a declaration of the right and duties of the respective parties in the premises; and the plaintiff does not have any remedy which is as plain, speedy and adequate and well suited to the plaintiff's needs as declaratory relief."

The prayer was for a joint and several judgment for damages on the first cause of action; for a declaration on the second cause of action "that plaintiff never had and does not now have syphilis and that such statements to that effect . . . are false, untrue and slanderous per se"; and for general relief.

Defendants William and Jean Keck and Hazel Edwards

individually filed general and special demurrers to the complaint, and specifically set up the one-year statute of limitations as contained in section 340, subdivision 3, Code of Civil Procedure.

All demurrers to the second count were sustained without leave to amend. Each demurrer to the first cause of action was sustained with leave to amend. Following plaintiff's election to stand upon her pleading, the court dismissed plaintiff's complaint against the demurring defendants. Plaintiff appeals from the judgment of dismissal.

■ It is not disputed that the utterances attributed to defendants are of the character which, if false and unprivileged when published, constitute slander *per se* (Civ. Code, §§ 46, subd. 2, 46, subd. 3, 46, subd. 4), for which an action will lie even without an allegation of special damages. (*Semple* v. *Andrews,* 27 Cal.App.2d 228 [81 P.2d 203]; *McLean* v. *Altringer,* 114 Cal.App. 363, 367 [300 P. 79]; 16 Cal.Jur., pp. 38-39.) However, defendants William and Jean Florian Keck contend that the complaint fails to state a cause of action for slander against them since it appears on the face of the complaint that their allegedly slanderous statements were published more than four years before January 13, 1953, the date upon which the complaint was filed. (Code Civ. Proc., § 340, subd. 3.) They seek to invoke the rule that where the complaint affirmatively shows upon its face that the action is outlawed by the passage of the limitation period, the bar of the statute of limitations may be raised by demurrer. (*California Safe Deposit etc. Co.* v. *Sierra etc. Co.,* 158 Cal. 690, 698 [112 P. 274, Ann.Cas. 1912A 729]; 16 Cal.Jur. p. 606.) However, plaintiff's complaint alleges that all of the slanderous statements purportedly published by the defendants were committed in furtherance of a conspiracy formed by said defendants to defame and damage her. She has alleged a publication by defendant Edwards to Nell Robinson as late as about March, 1952, in furtherance of the common design of the defendants to slander her. ■ While a conspiracy is in existence, the statute of limitations will not begin to run until there is a cessation of the wrongful acts committed in furtherance of the conspiracy. (*People* v. *Hess,* 104 Cal. App.2d 642, 678 [234 P.2d 65].) In 53 Corpus Juris Secundum, Libel and Slander, page 240, this proposition is stated as follows: "Where the complaint alleges that all the allegedly libelous acts were committed pursuant to a conspiracy

formed by the defendants, the statute of limitations does not commence to run against any of the alleged libelous acts until the commission of the last overt act done in pursuance of the conspiracy." The text is supported by *Maclaskey* v. *Mecartney*, 324 Ill.App. 498 [58 N.E.2d 630, 636]. In the instant case, an overt act in pursuance of defendants' conspiracy is alleged to have occurred less than one year before the filing of the complaint and hence within the statutory period of limitations.

Defendants Jean and William Keck vainly argue that the complaint fails to state a cause of action against them in that it does not sufficiently allege the facts or circumstances of the purported conspiracy. They contend that plaintiff's complaint must contain more than a simple allegation that they "combined and conspired." While it may be that the mere allegations of "conspiracy," "combination" and "common design" which are interspersed in the pleading, standing alone, are conclusions, nevertheless, a reading of the entire complaint shows that these terms are aided by other allegations which elaborate on the mutual understanding arrived at by defendants, and when all of the allegations are considered together, they adequately charge the defendants with having acted jointly, according to a preconceived plan, to disseminate and publish statements imputing to plaintiff the present existence of an infectious or loathsome disease. It is thus abundantly obvious that plaintiff has done far more than confine her complaint to a naked allegation of conspiracy. (*California Auto Court Assn.* v. *Cohn*, 98 Cal.App.2d 145, 149 [219 P.2d 511]. See *Lorenson* v. *Superior Court*, 35 Cal.2d 49, 57, 58, 61 [216 P.2d 859].) A greater quantum of detail was not required. This is particularly true where conspiracy is involved, for the courts recognize that because of the clandestine nature of the scheme or undertaking engaged in, its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action. (*Lorenson* v. *Superior Court, supra*; *Campbell* v. *Birch*, 19 Cal.2d 778, 789 [122 P.2d 902]; *California Auto Court Assn.* v. *Cohn, supra*; *Biggs* v. *Tourtas*, 92 Cal. App.2d 316, 322 [206 P.2d 871].) Plaintiff's complaint sufficiently apprised defendants of the character and type of facts and circumstances upon which she was relying to establish the conspiracy. (*California Auto Court Assn.* v. *Cohn, supra*; *Stansberry* v. *McKenzie*, 192 Tenn. 638 [241 S.W.2d

834

600, 601]; *Nardyz* v. *Fulton Fire Ins. Co.*, 151 Kan. 907 [101 P.2d 1045, 1048].; *Ketcher* v. *Sheet Metal Workers' Intl. Assn.*, 115 F.Supp. 802, 815.)

 Defendants Jean and William Keck make the further contention that the complaint is fatally defective as against them in that it discloses that the publications allegedly made by them were conditionally privileged yet plaintiff has failed to allege malice in such a manner as to defeat the privilege. They cite section 47, subdivision 3, of the Civil Code* and assert the complaint demonstrates that the defendants had an interest in the fitness of the person who might prepare their food and were therefore privileged to discuss the plaintiff. Unfortunately for the vitality of this proposition, the pleadings are destitute of any allegations which would give rise to the conditionally privileged occasions hypothesized by defendants or of any other qualified privilege. The interpretation contended for by defendants can be achieved only by severely wrenching the facts alleged and implying others not pleaded. The complaint itself comprises no statements that would suggest that plaintiff had ever sought employment by William Keck or any other defendant, nor is there any intimation that the communications published concerned plaintiff as an existing, former or prospective employee. For aught that appears from the pleadings, the statements published by defendants were the irresponsible utterances of a close-knit coterie of scandalmongers discussing a choice morsel of base gossip, who leagued themselves in a conspiracy to denigrate plaintiff's reputation through the circulation of the slanderous remarks. While defendants may be able to establish privilege in resisting this action, we are concerned only with the complaint as it stands at a time when the verity of its allegations must be accepted.

Similarly, defendants' demurrers on the ground that the complaint was uncertain are not well taken. The uncertainty alleged to exist is that it cannot be ascertained from the complaint: (a) with particular reference to paragraph VII, "how or in what manner the defendants combined and conspired by common design to defame and damage the plaintiff";

(b) "how or in what manner the defendants at the time and place alleged discussed the plaintiff and what agreement, if any, they did reach concerning said plaintiff";

*This section provides, *inter alia*: "A privileged publication is one made— . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested. . . ."

(c) what times, places and persons are referred to in that portion of paragraph VIII reading: "various time and places to numerous persons";

(d) whether the particular demurrant is among those defendants alleged in paragraph VIII to have "repeated and published the same to numerous other persons unknown to plaintiff but known to defendants."

Thus, in (a) and (b) above, each defendant sought a more specific allegation concerning how, or in what manner, they "combined and conspired," and how, or in what manner they discussed plaintiff, and what agreement, if any, they reached. However, as has already been noted, the allegations of the amended complaint were sufficiently clear to acquaint defendants with the issues they were to meet. Furthermore, the considerations we have adverted to which permit greater liberality in the pleading of a conspiracy, apply with equal force at this point. As stated in *Biggs* v. *Tourtas,* 92 Cal. App.2d 316, 322 [206 P.2d 871]: "The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which the conspiracy may be inferred." With respect to item (d), *supra,* the amended complaint also clearly indicated that each of the defendants is referred to as having repeated and published the statements complained of to the "numerous persons" mentioned.

In specification (c), *supra,* defendants assert that the complaint was also uncertain in that it alleged publications of the defamatory matter at "various times and places to numerous persons." However, it should be observed that in the same paragraph, plaintiff alleged, upon information and belief, that defendants repeated and published the slanderous statements "to numerous other persons unknown to plaintiff but known to defendants." ▮ Such allegations, which apply to matters peculiarly within the knowledge of the defendants, may properly be based upon information and belief. (*McDermont* v. *Anaheim Union Water Co.,* 124 Cal. 112, 115 [56 P. 779]; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 206 [92 P. 184]; *Penziner* v. *West American Finance Co.,* 133 Cal.App. 578, 591 [24 P.2d 501].) ▮ Less particularity is required in the allegations of the complaint where, from the nature of the matters alleged, the adverse party has a knowledge of the facts superior to the party pleading them. (*Goldstein* v. *Healy,* 187 Cal. 206 [201 P. 462]; *Turner* v. *Milstein,* 103 Cal.App.2d

651, 658 [230 P.2d 25]; *Gerritt* v. *Fullerton U. H. Sch. Dist.*, 24 Cal.App.2d 482 [75 P.2d 627]; *Swasey* v. *de L'Etanche*, 17 Cal.App.2d 713 [62 P.2d 753].) █ A demurrer for uncertainty does not lie where the ambiguous facts alleged are presumptively within the knowledge of the demurring party. (*Bacon* v. *Wahrhaftig*, 97 Cal.App.2d 599, 605 [218 P.2d 144]; *Merlino* v. *West Coast Macaroni Mfg. Co.*, 90 Cal.App.2d 106, 108 [202 P.2d 748]; *Swasey* v. *de L'Etanche, supra.*) If, as the complaint alleges, defendants repeated and published statements "to numerous other persons unknown to plaintiff but known to defendants," then plaintiff obviously cannot particularize; and her positive allegations that other statements were made at "various times and places to numerous persons" are matters which are patently within the superior knowledge of defendants. Defendants' special demurrers were therefore not well grounded.

In the light of the foregoing principles, the court erred in sustaining the demurrers to the first cause of action.

█ So far as plaintiff's action for declaratory relief* is concerned, the basis for this remedy stems from the following allegations of the second cause of action, which, after repleading the allegations of the first cause of action, states: "That whereas the defendants have imputed to plaintiff during the times above alleged the present existence of an infectious, contagious and loathsome disease, to wit: syphilis; and whereas the plaintiff alleges that she has never had and does not now have the said disease, a controversy has arisen between the parties, and plaintiff desires a declaration establishing the truth of and concerning the plaintiff, that she has never had and does not now have syphilis, and that such statements and imputations to that effect, as above alleged, are false, untrue and slanderous per se; plaintiff seeks a declaration of the rights and duties of the respective parties in the premises; and the plaintiff does not have any remedy which is as plain, speedy and adequate and well suited to the plaintiff's needs as declaratory relief."

It is at once manifest that the lower court was correct in sustaining the demurrer to this count. It is clear from the allegations that the only real controversy between the parties relates to the question of defendants' responsibility for the

---

*Section 1060, Code of Civil Procedure, provides, in part, that an interested person "who desires a declaration of his rights or duties with respect to another" may obtain declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties."

injury to plaintiff caused by a series of allegedly slanderous publications made in the past, for which damages are sought. From the facts alleged in her first cause of action, plaintiff had an accrued cause of action at law which, if proved, would render all the defendants liable. An adjudication upon the issues raised in plaintiff's first cause of action would fully and adequately determine all matters actually in controversy between the parties. (*Simpson* v. *Security First Nat. Bank,* 71 Cal.App.2d 154, 157 [162 P.2d 494] ; *Citizens' etc. Pensions* v. *Board of Supervisors,* 91 Cal.App.2d 658, 660 [205 P.2d 761]. See *Columbia Pictures Corp.* v. *De Toth,* 26 Cal.2d 753, 761 [161 P.2d 217, 162 A.L.R. 747].) While plaintiff also asks for a declaration establishing the fact that she never had syphilis, this is beyond the scope of the controversy and the court was justified in refusing to entertain the count under the declaratory relief provisions of the code ''where its declaration or determination is not necessary or proper at the time under all the circumstances.'' (Code Civ. Proc., § 1061; *City of Alturas* v. *Gloster,* 16 Cal.2d 46, 49 [104 P.2d 810] ; *Simpson* v. *Security First Nat. Bank, supra.*) ■ The rules applicable to the facts of the present case are well epitomized in two decisions of this court in the following language: ''The entertainment of an action for declaratory relief is within the discretionary power of the court (Code Civ. Proc., § 1061) and is not reviewable upon appeal except for an abuse of discretion. [Citing cases.] Permission to resort to declaratory relief is a matter of sound discretion of the court. ■ Such an action is usually unnecessary where an adequate remedy exists under some other form of action [citations]. . . .'' (*Wieber* v. *Worton,* 105 Cal.App.2d 626, 627 [234 P.2d 114] ; *Pacific Electric Ry. Co.* v. *Dewey,* 95 Cal.App.2d 69, 71. [212 P.2d 255].)

The judgment is reversed with directions to the trial court to overrule the demurrers to the first cause of action in the amended complaint and to allow the defendants a reasonable time within which to file their respective answers. In other respects, the judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied June 29, 1954, and respondents' (William Keck, Jean Keck and Hazel Edwards) petition for a hearing by the Supreme Court was denied August 4, 1954.