**Harold G. Talley, Plaintiff-Appellant, v. Alton Box Board Company, et al., Defendants-Appellees.**

**Gen. No. 62–M–8.**

Fourth District.

July 6, 1962.

Rehearing denied October 22, 1962.

Virgil M. Jacoby, of Alton (Harold G. Talley, pro se, of Alton), for appellant.

Green & Hoagland, of Alton, William C. Dunham, Pope & Driemeyer, of East St. Louis, Eastman, Schlafly & Godfrey, of Alton, Fred P. Schuman, of Granite City, and Gordon Burroughs, of Edwardsville, for appellees.

SCHEINEMAN, P. J.

This was originally a suit in chancery, brought by several corporations, seeking an injunction to restrain certain proceedings in the County Court, involving a claim for large attorney fees. Attorney Talley, hereafter referred to as plaintiff, filed as part of his answer, certain claims for damages, alleging that the corporations were guilty of libel in their charges against him, in the County Court pleadings. These counts were dismissed on motion, and final judgment entered thereon against plaintiff in February, 1961.

That judgment was set aside on plaintiff's motion within 30 days, apparently on the argument that a law judgment cannot be entered in a chancery suit. There were decisions to that effect in the days of common law pleading, but that rule is deemed abolished

under modern practice. Westerfield v. Redmer, 310 Ill App 246, 33 NE2d 744.

■ ■ There ensued several hearings and rulings dismissing the libel counts. The defendants filed a motion in this court to dismiss the appeal, on the ground the notice of appeal had not been filed in due time. When the February judgment was set aside in due time, it left the pleadings as though no judgment was ever entered. Carey-Lombard Lumber Co. v. Daugherty, 125 Ill App 258. The subsequent orders dismissing the libel counts were not final judgments, since plaintiff had a right to ask leave to amend. In September, there was not only the order of dismissal, but also a final judgment that plaintiff take nothing on these counts. The notice of appeal was filed within 60 days thereafter. Therefore, the motion to dismiss this appeal has been denied, and we proceed to consider the merits of the case.

The factual background of the present litigation is as follows: The Wood River Drainage and Levee District, of Madison County, had previously obtained an assessment of about $1,750,000 for a river project. Early in 1957 the drainage commissioners filed a petition in the County Court for a large additional assessment. Numerous property owners filed objections, and the litigation extended over a period of about three years, with a resulting order for an additional assessment of about $800,000 and directing the preparation of the assessment roll.

The commissioners then filed in the pending proceeding, a petition for approval of and direction to pay to plaintiff, Talley, a partial attorney fee for services to date, in the aggregate of about $57,000 and asking the court to direct the payment of the balance due thereon, "or such an additional amount as the Court may deem to be reasonable," etc.

140

An exhibit attached to this petition consisted of 34 pages of items, purporting to be the legal services for which the charges were made. The additional abstract shows that there were included a large number of hours of conferences, at $25 per hour. Some of these hours were with opposing counsel, but there appear to be many hours listed of conferences with officers or employees of various companies with property in the district.

Objections to this petition regarding attorney fees were filed in the County Court by Alton Box Board Company, Unit Rail Anchor Company, Inc., Beall Tool Division and International Shoe Company, American Smelting & Refining Company, Laclede Steel Company, Owens-Illinois Glass Company, Shell Oil and Standard Oil Companies, Illinois Power Company, Illinois Terminal Railroad Company, and Sinclair Oil Company. These are the companies now being sued for libel, therefore, for convenience, they are referred to herein as "defendants."

The objections included statements that the court, when it ordered the additional assessment, had fixed the amount of attorney fees at $53,500 as required to the completion of the work which should not now be changed; that there was no showing the amount realized from the assessment would be sufficient to pay any more than that; that any allowance should be limited to funds to become available; that the fees claimed did not apportion the amount for services on increased annual maintenance, for which the attorney had been paid $400 per month, and for the portion allocable to some other fund; that much of the time was on matters personal between the attorney and certain objectors, and not for the needs of the district. There was included the following paragraph, here quoted in full, since it is the nub of plaintiff's complaint:

141

"That the itemization of legal services as contained in said petition covers much time spent by the attorney for the Commissioners in direct negotiations with various personnel of corporations dealing with the District, when such corporations were then represented by legal counsel requiring dealings and negotiations by the attorney for the District with the respective attorneys for the parties with whom the District was dealing. That such conduct is proscribed by applicable canons of ethics pertaining to the practice of law, and compensation from public moneys derived by taxation should not be available for payment thereof."

On this appeal, the plaintiff contends that the allegations of this paragraph are libelous per se, and that they are not privileged, because (a) the County Court did not have jurisdiction to hear such a matter, and (b) the allegations were not pertinent or relevant to the litigation. The Circuit Court ruled against him on both points.

The argument about jurisdiction seems to be based on the fact that the County Court has no power to disbar an attorney, nor even to prohibit him from practice in that particular court. There was no attempt being made to disbar anyone, nor was there any suggestion that any attorney be suspended from practice in that court. The matter before the County Court in which this pleading was filed, was a drainage matter, in which the plaintiff in this suit was the attorney who filed the commissioners' petition to approve his fees, to be paid out of public funds. We cannot take seriously his contention that the court had no jurisdiction of the proceedings then before it. The point is rejected as having no merit.

The principal argument is that the reference to professional ethics was not relevant, pertinent or material to the matter in controversy; and that violation

142

of the Canons of Ethics does not bar the right to fees, nor in any way affect the lawyer's right to payment. In considering this question, we are not passing on whether legal conduct may be relevant in the technical sense, that is, whether it would be an actual defense to the amount of fees claimed. It is not necessary that the words be relevant or pertinent in that technical sense.

One of the leading cases on this subject is Hoar v. Wood, 44 Mass 193. Among other things, the court said: "And in determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of the cause in court." It was recognized that the privilege should not be extended to slanderous comment which has no relation to the matter of the inquiry, but added: "Subject to this restriction, it is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech in conducting the causes, and advocating and sustaining the rights of their constituents; and this freedom of discussion ought not to be impaired by numerous refined distinctions."

That decision has been widely cited and quoted in many states, including Illinois. Parker v. Kirkland, 298 Ill App 340, 18 NE2d 709. The Massachusetts case also pointed out the use of the words, "relevant and pertinent" was not desirable, and the wording of the rule of privilege in judicial proceedings was more accurate in the Restatement, 3 Torts, Sec 587(c). That rule is:

> "It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of inquiry. Thus, while a party may not introduce defamatory matter which is entirely disconnected with the litigation, he is not answerable

143

for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation."

This court approves and adopts the foregoing statement of the rule. In its application in this case, it is to be noted that there was no charge of unethical conduct in general. The allegation was limited to particular actions in the precise services for which fees were claimed, as set forth in the attorney's itemized list. Even if it is "surplusage" it did have a direct bearing on the subject of the inquiry. We have previously held that: "the defamatory words must be connected with or relative to the cause in hand or subject of inquiry, but all doubts are resolved in favor of relevancy or pertinency." Harrell v. Summers, 32 Ill App2d 358, 178 NE2d 133.

In support of the assertion that violation of ethics does not "in any way" affect the lawyer's right to payment, the plaintiff cites Ringen v. Ranes, 263 Ill 11, 104 NE 1023, and Hunter v. Troup, 315 Ill 293, 146 NE 321. In the first, the court criticized the method used by the attorney to obtain the business and made a statement that Canons of Ethics are not laws, and are not enforced by the courts. The connection of this rule with the actual decision is not clear. On the actual issues the court found the evidence did not sustain charges that the clients were induced to sign while they were drunk, or did not have the mental capacity to contract, or that there was a conspiracy between two attorneys, etc.

In the Hunter case, the court found that the possession of a void deed to property in the trust, not disclosed to client, had not interfered in any degree with the attorney's exclusive devotion to his client's interests. There was then a quotation from the previous case as to canons not being laws nor enforced by the

courts, although they constitute a safe guide for professional conduct; and the court added, "an attorney may be disciplined by this court for not observing them."

 While unethical conduct may not always bar attorney fees, it is hardly accurate to say it cannot affect them, because there are cases where it certainly did. In a New York case, the attorney seeking to recover fees was charged with "improperly disclosing confidential communications." The statement was held sufficiently relevant to the issue to be clothed with privilege. Garr v. Seldon, 4 NY 91. Another case denied recovery of attorney fees on the ground the attorney's conduct was contrary to the character of the profession. Ingersoll v. Coal Creek Coal Co., 117 Tenn 263, 98 SW 178.

In People v. Berezniak, 292 Ill 305, 127 NE 36, the court included in the definition of unprofessional conduct "that which violates the rules or ethical code of a profession."

The two cases last cited are quoted in Morris v. Pennsylvania R. Co., 10 Ill App2d 24, 134 NE2d 21, which involved lawyers' fees. On page 32 the court refers to conduct "contrary to the ethics of the profession" and again on page 35 reference is made to the Canons of Ethics.

In another case in this state where the right to compensation was involved, the court also placed much stress on professional conduct, emphasizing that it had special importance when payment was to come from public funds. Here, also, the court gave this definition: "Unprofessional conduct in a lawyer is that which violates the rules or ethical code of his profession or which is unbecoming to a member of that profession." In re Sanitary Dist. of Chicago Attorneys, 351 Ill 206, 225, 184 NE 332.

■ The foregoing is sufficient to show that the courts freely refer to the Code of Ethics as a reliable guide to what constitutes unprofessional conduct; also, that such conduct does have some effect on attorney fees, and in some cases, may be a complete bar to any recovery. Since the courts freely refer to conduct and ethics, and sometimes find such conduct is a complete defense to recovery, the law must not gag the attorney or bar him from speaking of that possible defense, under the threat of subjecting his client to a libel suit.

Nor would it be proper or good law to require that an attorney must guess whether a particular violation will be regarded by the courts as sufficiently serious to bar attorney fees, or to reduce them, or to be no defense at all. Such a variation would certainly be introducing "refined distinctions" which highly respected courts have declared should be avoided, in deciding whether an allegation is privileged.

■ This court therefore holds that comments on the conduct of an attorney in performing the services for which he is seeking compensation are absolutely privileged in judicial proceedings.

■ The term "absolute privilege," as used in the restatement, we define as a privilege which persists from start to finish, so that, it makes no difference whether the final decision is that the alleged impropriety is a defense, or is no defense, or is completely false.

■ The ruling of the Circuit Court that the allegations in the pleadings in the County Court were privileged was correct and the judgment is affirmed.

Judgment affirmed.

CULBERTSON and HOFFMAN, JJ., concur.