RICHARD C. DEFEND *et al.*, Plaintiffs and Counterdefendants-Appellants, v. RONALD F. LASCELLES *et al.*, Defendants and Counterplaintiffs-Appellees.

Fourth District   No. 4—86—0192

Opinion filed November 7, 1986.

Brown, Hay & Stephens, Mohan, Alewelt & Prillaman, and Holley, Keith & Mehlick, all of Springfield (Paul Bown, Paul Adami, and Grady E. Holley, of counsel), for appellants.

Barber, Segatto, Hoffee, Hines & Edwards, of Springfield (Barry O. Hines, Carl O. Hoffee, R. Kurt Wilke, and Bernard C. Segatto III, of counsel), for appellees.

JUSTICE MORTHLAND delivered the opinion of the court:

This matter involves a permissive interlocutory appeal brought pursuant to Supreme Court Rule 308 (87 Ill. 2d 308). Plaintiffs contest the denial of their motion to dismiss count I of the defendants' counterclaim sounding in defamation. That defamation claim, in turn, was brought based upon the allegations contained in count IV of the plaintiffs' second amended complaint charging defendants with a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. sec. 1961 *et seq.* (1982)). The question certified for appeal to this court concerns whether pleadings alleging a civil cause of action under a Federal criminal statute are to be afforded an absolute privilege even if filed with malicious intent.

The case now under our consideration represents the third time these parties have come before us on appeal. Their protracted dispute

revolves around the propriety of four condominium-style duplexes planned for construction in the village of Leland Grove. Plaintiffs are owners of single-family residences immediately adjacent to the condominium project site. Defendants are the developers of the project.

The genesis of this particular matter arises out of the contentions made under count IV of the plaintiffs' second amended complaint, filed July 2, 1985. In that count, plaintiffs made the following allegations:

> "13. By engaging in mail and wire fraud, each of the Defendants used income derived from a pattern of racketeering as defined in 18 U.S.C. Section 1961(5) in the operation of an enterprise in violation of 18 U.S.C. Section 1962(a).
>
> 14. By engaging in mail and wire fraud, the Defendants *** acquired and maintained an interest in or control of an enterprise through a pattern of racketeering in violation of 18 U.S.C. Section 1962(b).
>
> 15. By engaging in mail and wire fraud, the Defendants each conducted the business of an enterprise through a pattern of racketeering in violation of 18 U.S.C. Section 1962(c)."

The defendants initially moved to dismiss the second amended complaint, arguing that a civil RICO action may only be maintained in the Federal courts, and thus the circuit court lacked jurisdiction to hear count IV. After that motion was denied by the trial court, defendants filed their two-count counterclaim on September 10, 1985. Count I asserted a cause of action in defamation, alleging that the plaintiffs' count IV contained false and defamatory matter, was filed with "malicious intent," and was intended to mean the defendants were racketeers.

Plaintiffs responded by filing a motion to dismiss the defendants' counterclaim on September 18, 1985. They postulated that, because pleadings are to be accorded an absolute privilege from a defamation action, count I of the counterclaim sounding in libel and based upon allegations made in a complaint could not be maintained.

The trial court disagreed, apparently denying the plaintiffs' motion to dismiss after a hearing November 8, 1985. Plaintiffs thereafter filed a motion to reconsider, which was also denied by the trial court. In its memorandum of opinion denying that motion, dated February 13, 1986, the court specifically stated:

> "It is this Court's opinion that great freedom must be allowed in letting the complaint and accusations stand, however severe, without being actionable, but the Court will not stand by and permit allegations to be made that are not honestly made and

are done for an evil-disposed purpose of vilifying a party."

On February 21, 1986, plaintiffs filed a request for certification pursuant to Supreme Court Rule 308. On March 12, 1986, the court found that the February 13 order involved a question of law as to which there exists a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation. The following question was then certified for appeal:

> "[W]hether pleading a civil cause of action for violation of the criminal statute *i.e.* The Racketeer Influenced and Corporate [*sic*] Organizations Act [18 U.S.C. sec. 1961 *et seq.* (1982)] is absolutely privileged from any counterclaim based on defamation, even if it is found that the civil cause of action was filed with malicious intent."

We allowed the permissive interlocutory appeal on April 14, 1986.

On appeal plaintiffs contend the trial court erred in not dismissing the defamation claim, advancing that pleadings in a judicial proceeding are absolutely privileged so long as those statements have "some relation" to the proceedings. Defendants counter that any absolute privilege is qualified by a requirement that pleadings not be filed with malice. They assert that Illinois courts require a litigant to present an honest complaint, and that the immunity otherwise afforded pleadings may not be abused "as a cloak with which to gratify private malice." Defendants further believe, in any event, that the RICO action brought by the plaintiffs is irrelevant and not pertinent, and thus cannot be privileged. Finally, defendants maintain that no privilege may be accorded statements made before a court which lacks subject-matter jurisdiction; they argue that jurisdiction over a civil RICO claim rests exclusively with the Federal courts.

For purposes of this interlocutory appeal, we must assume, under the precise question certified, that the pleadings in question here were filed with malice.

■■ ■ We begin our analysis by recognizing the oft-stated principle in Illinois that anything said or written in a legal proceeding, including pleadings, is protected by an absolute privilege against defamation actions, subject only to the qualification that the words be relevant or pertinent to the matters in controversy. (*Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 376 N.E.2d 991; *McDavitt v. Boyer* (1897), 169 Ill. 475, 48 N.E. 317; *Emery v. Kimball Hill, Inc.* (1983), 112 Ill. App. 3d 109, 445 N.E.2d 59; *Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130; *Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 384 N.E.2d 759; *Weiler v. Stern* (1978), 67 Ill. App.

3d 179, 384 N.E.2d 762; *Wahler v. Schroeder* (1972), 9 Ill. App. 3d 505, 292 N.E.2d 521; *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 290 N.E.2d 912; *Nolin v. Nolin* (1966), 68 Ill. App. 2d 54, 215 N.E.2d 21; *John Allan Co. v. Brandow* (1965), 59 Ill. App. 2d 328, 207 N.E.2d 339; *Talley v. Alton Box Board Co.* (1962), 37 Ill. App. 2d 137, 185 N.E.2d 349; *Harrell v. Summers* (1961), 32 Ill. App. 2d 358, 178 N.E.2d 133; *Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 58 N.E.2d 630; *Dean v. Kirkland* (1939), 301 Ill. App. 495, 23 N.E.2d 180; *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709; see also *Ginsburg v. Black* (7th Cir. 1951), 192 F.2d 823, *cert. denied* (1952), 343 U.S. 934, 96 L. Ed. 1342, 72 S. Ct. 770; *Bond v. Pecaut* (N.D. Ill. 1932), 561 F. Supp. 1037.) The terms "relevancy" or "pertinency," however, are not intended in the technical legal sense. (*Talley v. Alton Box Board Co.* (1962), 37 Ill. App. 2d 137, 143, 185 N.E.2d 349, 352.) Also, relevancy or pertinency is not a strict requirement (*Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 317, 426 N.E.2d 1130, 1132); in fact, courts are generally liberal in construing this question, resolving all doubts in favor of relevancy or pertinency (*Ginsburg v. Black* (7th Cir. 1951), 192 F.2d 823; *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615, 290 N.E.2d 912, 913-14). Moreover, relevancy or pertinency is a question of law to be determined in the first instance by the court. *Ginsburg v. Black* (7th Cir. 1951), 192 F.2d 823; *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615, 290 N.E.2d 912.

The privilege itself is steeped in public policy: it is uniformly recognized that the judicial system would best be served if persons with knowledge of relevant facts could report those facts to the court without fear of civil liability. *Bond v. Pecaut* (N.D. Ill. 1983), 561 F. Supp. 1037, *aff'd* (7th Cir. 1984), 734 F.2d 18; *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709.

Plaintiff calls our attention to another view in this area which substitutes a different yardstick for the "relevant and pertinent" inquiry relied upon by many courts. That analysis provides for an absolute privilege when otherwise defamatory material is published in a judicial proceeding if the statements have "some relation" to the litigation. Specifically, section 587 of the Restatement (Second) of Torts states the following:

> "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is *absolutely privileged* to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial pro-

ceeding in which he participates, if the matter has *some relation* to the proceeding." (Emphasis added.) Restatement (Second) of Torts sec. 587, at 248 (1977).

The Restatement standard has gained wide acceptance, becoming the majority rule today. (See 38 A.L.R.3d 272 (1971).) At least two appellate courts in Illinois have heretofore embraced versions of the Restatement rule. See *Talley v. Alton Box Board Co.* (1962), 37 Ill. App. 2d 137, 185 N.E.2d 349; see also *Wahler v. Schroeder* (1972), 9 Ill. App. 3d 505, 292 N.E.2d 521.

Clearly, then, depending upon the analysis employed, the threshold inquiry concerns whether the complained-of allegations are "relevant and pertinent" or bear "some relation" to the litigation. If so, pleadings in a judicial proceeding are absolutely privileged and cannot ordinarily form the basis of a defamation action. Defendants steadfastly maintain, though, that any pleading filed maliciously should not be granted an absolute privilege.

■■ ■ As a general principle, certain types of statements are deemed so privileged that the person making the statement should not be deterred from speaking by the threat of civil liability. In such a case an absolute privilege is granted, and no cause of action for defamation will lie against the person making the statement even if it is made with malice. (*Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 653, 490 N.E.2d 1062, 1063.) This immunity afforded *absolutely* privileged matter is complete. It is not conditioned upon an honest or reasonable belief that the defamatory matter is true, or upon the absence of ill will on the part of the speaker. (Restatement (Second) of Torts sec. 584, Introductory Note, at 242-43 (1977).) On the other hand, where only a *qualified* privilege is granted based upon a lesser concern for the freedom of the speaker, the person making the statement is immune from liability unless the privilege is abused or some element such as malice is present. (*Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 653, 490 N.E.2d 1062; *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167; W. Prosser, Torts sec. 115, at 794 (4th ed. 1971).) When a qualified privilege is shown, the plaintiff has the burden of alleging and proving actual malice. *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167.

The law thus clearly allows for an absolute privilege where there exists a significant interest in protecting the type of speech involved. In such cases, malice alone on the part of the speaker will not defeat the privilege. Accordingly, the prevailing rule in the United States today is that libelous material contained in a pleading is absolutely privileged so long as it is pertinent, relevant, or bears some reasonable re-

lation to the judicial proceeding, irrespective of whether it is false and malicious. (50 Am. Jur. 2d *Libel & Slander* (sec. 238 at 751-52 (1970); 38 A.L.R.3d 272, 279 (1971).) As a historical note, the American rule as it has evolved differs slightly from the traditional English rule, which provides that any statement contained in a pleading is absolutely privileged regardless even of its relevancy to the issues. *Hoar v. Wood* (1841), 44 Mass. (3 Met.) 193.

As we have previously stated, the weight of authority in Illinois clearly favors recognition of an absolute privilege for statements made in a judicial proceeding based upon public policy. The defense of privilege or immunity in defamation cases rests upon the idea that "conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance," an interest to be protected "even at the expense of uncompensated harm to the plaintiff's reputation." (W. Prosser, Torts sec. 114, at 776 (4th ed. 1971).) Further, comment *a* to section 587 of the Restatement explains:

> "The privilege stated in this Section is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. \*\*\* It protects a party to a private litigation \*\*\* from liability for defamation *irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity*." (Emphasis added.) (Restatement (Second) of Torts sec. 587, comment *a*, at 249 (1977).)

See also *Bond v. Pecaut* (N.D. Ill. 1983), 561 F. Supp. 1037.

Accordingly, where an absolute privilege is afforded, malice will normally not defeat the privilege, again based upon the public interest of encouraging access to the court system while facilitating the truth-seeking process therein.

Defendants nevertheless still contend that a "qualified absolute privilege" is the rule where the pleading itself is filed maliciously. They cite *White v. Nicholls* (1845), 44 U.S. 266, 11 L. Ed. 591, in which the United States Supreme Court stated that, for words used in the course of a judicial proceeding to be actionable, the party complaining of the otherwise privileged statements must prove actual or express malice. They submit that the *White* opinion stands for the proposition that a defamatory statement made in a judicial proceeding is not entitled to immunity; the party allegedly defamed may overcome the privilege by showing that the defamatory words were not uttered in good faith, but rather were made with malice and without an honest belief in their truth.

■ We question whether *White* remains good precedent today. In *Briscoe v. LaHue* (1983), 460 U.S. 325, 75 L. Ed. 2d 96, 103 S. Ct. 1108, the court, in a footnote, opined that the discussion in *White* regarding privileged statements in judicial proceedings was purely *dictum*. Further, the court believed this discussion may not even have been a reliable statement of the common law, and thus the court could not consider the opinion as authoritative. (460 U.S. 325, 332-33 n.12, 75 L. Ed. 2d 96, 105-06 n.12, 103 S. Ct. 1108, 1114 n.12.) (But see the dissent in *Briscoe*, in which it is argued that *White* is still good law, that only a qualified privilege exists for words spoken in judicial proceedings, and that these words may form the foundation of an action for slander upon proof of express malice (460 U.S. 325, 353-55, 75 L. Ed. 2d 96, 119-20, 103 S. Ct. 1108, 1125-26 (Marshall, J., dissenting)).) The court in *Briscoe* went on to specifically state that once allegedly defamatory statements by a witness are shown to be relevant to a judicial proceeding in which they are made, then an absolute privilege is granted; a party may not recover even if the speaker knew the statements were false and made them with malice. (460 U.S. 325, 331-32, 75 L. Ed. 2d 96, 105, 103 S. Ct. 1108, 1113-14.) The better approach, as we view it, is to adhere to the majority opinion in *Briscoe* and the modern rule as adopted in most States, including Illinois.

Relying next on a series of older Illinois decisions, defendants still maintain that the courts of this State do not sanction the filing of malicious pleadings by granting an absolute privilege. They continue to stress that allegations in a complaint are completely privileged only if they are "honestly presented" (*McDavitt v. Boyer* (1897), 169 Ill. 475, 483, 48 N.E. 317, 319) and that proof of malice by itself is sufficient to defeat the privilege and prevail. Otherwise, defendants claim, the granting of an absolute privilege constitutes "a license to libel." Parenthetically, we note that the trial court in its memorandum of opinion referred to two cases the defendants also rely upon in their brief on appeal in this regard (*Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 58 N.E.2d 630; *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709).

Defendants, however, apparently fail to consider the full import of the decisions they have cited to us. Initially, we recognize that defendants rely heavily upon the supreme court's opinion in *McDavitt*. Defendants call our attention to language of the *McDavitt* court to the effect that words stated or written in a legal proceeding are privileged if pertinent and material to the matter in controversy, "provided such complaints are honestly presented." (*McDavitt v. Boyer*

(1897), 169 Ill. 475, 483, 48 N.E. 317, 319.) They also note the court further stated a party is not to be found liable in slander "for any statement which he may make in good faith in relation to the matter there pending." (169 Ill. 475, 484, 48 N.E. 317, 320.) These requirements of good faith and honest presentation of evidence, defendants urge, are also to be considered in determining whether a privilege exists.

Our review of *McDavitt* indicates the court was operating under the then-general rule that, upon proof of injury to reputation by false statements defamatory *per se*, a *prima facie* case was made out. (*McDavitt v. Boyer* (1897), 169 Ill. 475, 481, 48 N.E. 317, 319.) Malice was not involved, being, in fact, presumed upon proof of the damaging publication and would only enter into consideration to counter a qualified privilege. (See *Herbert v. Lando* (1979), 441 U.S. 153, 175-76, 60 L. Ed. 2d 115, 133, 99 S. Ct. 1635, 1648.) Therefore the general rule was subject to an important qualification—that when the otherwise injurious utterance was privileged, no presumption of malice arose. (*McDavitt v. Boyer* (1897), 169 Ill. 475, 481, 48 N.E. 317, 319.) In such a case, a plaintiff would be called upon to prove actual malice on the part of a defamation defendant, something he need not ordinarily show.

Continuing, the court in *McDavitt* noted as a matter of public policy that a witness should be encouraged to tell the truth in court, and therefore no action for slander should be maintained against him "unless he takes advantage of his position as a witness to assail wantonly the character of another, and to tell maliciously what he knows to be false in regard to a matter that is not relevant to the subject of inquiry." (*McDavitt v. Boyer* (1897), 169 Ill. 475, 482, 48 N.E. 317, 319.) The court stated:

> "Whatever is said or written in a legal proceeding, pertinent and material to the matter in controversy, is privileged, and no action can be maintained upon it. [Citations.] Malice cannot be predicated on what is said or written in a proceeding in a court of justice. Words, spoken to a magistrate in the course of a judicial proceeding, *though they may be slanderous and malicious, are not actionable.*" (Emphasis added.) (169 Ill. 475, 483, 48 N.E. 317, 319.)

Furthermore, referring to the impact of the leading case of *Hoar v. Wood* (1841), 44 Mass. (3 Met.) 193, the *McDavitt* court succinctly summarized the state of the law as follows:

> "[W]ords spoken in the course of judicial proceedings, *** even though they are such as to impute crime to another, and, there-

fore, if spoken elsewhere, would impute malice and be actionable in themselves, *are not actionable if they are applicable and pertinent to the subject of inquiry."* (Emphasis added.) *McDavitt v. Boyer* (1897), 169 Ill. 475, 484, 48 N.E. 317, 320.

Thus, under *McDavitt*, we perceive that privileged statements in a judicial proceeding were subject to a two-pronged inquiry: whether they were relevant or pertinent to the proceeding, in which case they would be nonactionable; or, if found not relevant or pertinent, whether they were made with malice. In the latter circumstance, a plaintiff would bear the burden of proving malice, something he would not ordinarily be called upon to do.

Similarly, the other cases relied upon by the defendants also hold that statements made in the course of judicial proceedings, if relevant or pertinent to the matter in controversy, are privileged, and no action could be maintained upon them. (*Strauss v. Meyer* (1868), 48 Ill. 385; *Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 58 N.E.2d 630; *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709.) Although the rule was referred to as a "qualified" one in *Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 509, 58 N.E.2d 630, 636, the courts still held that the privilege applied subject to the restriction that a party shall not avail himself of the opportunity to gratify private malice by making statements "which have no relation to the cause or subject matter of the inquiry." *Parker v. Kirkland* (1939), 298 Ill. App. 340, 346, 18 N.E.2d 709, 713.

The privilege thus applied where the words were material or pertinent to the issues presented (*Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 58 N.E.2d 630; *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709), and in such a case the presumption of malice would cease to operate (*McDavitt v. Boyer* (1897), 169 Ill. 475, 48 N.E. 317). Further, the court in *Maclaskey*, in discussing the procedure whereby the privilege could be defeated by proving the statements were irrelevant, specifically stated:

"If defendants, in good faith, believed that the charges were material and pertinent to the issues, such a defense would be an affirmative one, to be established by the evidence." (*Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 510, 58 N.E.2d 630, 636.)

Accordingly, from these decisions, where the absolute privilege was found inapplicable because the statements were shown to be irrelevant or not pertinent, the party originally claiming the privilege could still affirmatively defend a subsequent malice charge by showing a good-faith belief in the relevancy of the statement. Under this proce-

dural analysis, pleadings would "not be abused as a cloak from beneath which to gratify private malice" (324 Ill. App. 498, 508, 58 N.E.2d 630, 635), as defendants have advanced.

To summarize our findings, we hold that otherwise defamatory statements made in a pleading filed in a judicial proceeding enjoy an absolute privilege if they are relevant, pertinent, or bear some relation to the subject in controversy. Whether or not the occasion gives rise to the privilege is solely a question of law for the court. If the complained-of statements are found not to reasonably relate to the issues, then the absolute privilege is no longer available and a charge of malice will enter into consideration as if a qualified privilege were involved instead.

■ Under the precise question certified, then, we find that pleading a civil cause of action for violation of the applicable RICO provision is absolutely privileged from any counterclaim based on defamation so long as it has some relation to the matter in controversy. If such is the case, malicious intent in filing the pleading is irrelevant.

We note that our conclusion is in agreement with a recent pronouncement of the Ohio Supreme Court. In *Surace v. Wuliger* (1986), 25 Ohio St. 3d 229, 495 N.E.2d 939, the Ohio court, relying on the absolute-privilege doctrine available in judicial proceedings, held that a party named as defendant in a civil RICO complaint could not sue for defamation. The court found that, as a matter of public policy, statements made in a written pleading are absolutely privileged only if "the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." 25 Ohio St. 3d 229, ____, 495 N.E.2d 939, 943.

■ Next, defendants argue that, "even if complaints need not be honestly made, the RICO action herein is irrelevant and impertinent." While the issue of whether the allegations contained in count IV are related to the cause of action is not presented to us under the precise question certified, we believe such a finding is implicit in the trial court's rulings below.

■ Defendants' next argument concerns whether a civil RICO action may be maintained in the State court. Defendants contend that jurisdiction over a RICO action is exclusively Federal, and thus the circuit court lacked jurisdiction over count IV of the plaintiffs' second amended complaint. Accordingly, they say, no absolute privilege may be afforded statements made in this proceeding.

We recognize that for the privilege to apply to relevant pleadings made during judicial proceedings, a court should at least have competent jurisdiction over the subject matter of the lawsuit. (*McDavitt v.*

*Boyer* (1897), 169 Ill. 475, 483, 48 N.E. 317, 319; *Parker v. Kirkland* (1939), 298 Ill: App. 340, 346, 18 N.E.2d 709, 712-13.) Although the defendants' contention could be construed as an attempt to raise as an issue before this court an adverse decision rendered by the trial court on their motion to dismiss the plaintiffs' RICO claim, we are also cognizant that any legitimate jurisdictional issue merits our consideration at any time.

There are no reported Illinois decisions construing whether a civil RICO claim is exclusively Federal or whether there exists concurrent jurisdiction between the State and Federal courts. The statute itself does not expressly indicate whether State courts may exercise jurisdiction over cases brought pursuant to it. (18 U.S.C. sec. 1964(c)(1982).) Our research indicates the scant case law on the subject is in conflict, some courts holding Federal courts enjoy exclusive jurisdiction (*Kinsey v. Nestor Exploration Ltd.* (E.D. Wash. 1985), 604 F. Supp. 1365; *County of Cook v. Midcon Corp.* (N.D. Ill. 1983), 574 F. Supp. 902, *aff'd on other grounds* (7th Cir. 1985), 773 F.2d 892; *Levinson v. American Accident Reinsurance Group* (Del. Ch. 1985), 503 A.2d 632; *Maplewood Bank & Trust Co. v. Acorn, Inc.* (1985), 207 N.J. Super. 590, 504 A.2d 819; *Greenview Trading Co. v. Hershman & Leicher, P.C.* (1985), 108 A.D.2d 468, 489 N.Y.S.2d 502; *Belfont Sales Corp. v. Gruen Industries, Inc.* (1985), 112 A.D.2d 96, 491 N.Y.S.2d 652; *Main Rusk Associates v. Interior Space Constructors, Inc.* (Tex. Ct. App. 1985), 699 S.W.2d 305), with other courts determining jurisdiction is concurrent (*Chas. Kurz Co. v. Lombardi* (E.D. Pa. 1984), 595 F. Supp. 373, 381 n.11; *Luebke v. Marine National Bank* (E.D. Wis. 1983), 567 F. Supp. 1460; *Cianci v. Superior Court* (1985), 40 Cal. 3d 903, 221 Cal. Rptr. 575, 710 P. 2d 375; see also *County of Cook v. Midcon Corp.* (7th Cir. 1985), 773 F.2d 892, 905 n.4 (where the Seventh Circuit Court of Appeals, stating in a footnote that it was not necessary to decide the issue of RICO jurisdiction at that time, expressed doubt that jurisdiction was exclusively Federal).

While we are aware that a court should have jurisdiction over the subject matter for the privilege to attach, a truer statement of the rule is that mere color of jurisdiction, in fact assumed, is sufficient. (*Emery v. Kimball Hill, Inc.* (1983), 112 Ill. App. 3d 109, 113, 445 N.E.2d 59, 62; *Wahler v. Schroeder* (1972), 9 Ill. App. 3d 505, 507, 292 N.E.2d 521, 523; W. Prosser, Torts sec. 114, at 780 (4th ed. 1971).) Thus, it is not absolutely necessary that a court have actual jurisdiction for the so-called pleadings privilege to be recognized. Parties should not be required to determine, at their peril, questions of

jurisdiction ahead of time. (W. Prosser, Torts sec. 114, at 780 (4th ed. 1971); 50 Am. Jur. 2d *Libel & Slander* sec. 233, at 746 (1970).) Where a court has subject-matter jurisdiction but lacks personal jurisdiction (*Emery v. Kimball Hill, Inc.* (1983), 112 Ill. App. 3d 109, 445 N.E. 2d 59), or where a court has jurisdiction of the parties and at least "color of jurisdiction" over the subject matter (*Wahler v. Schroeder* (1972), 9 Ill. App. 3d 505, 292 N.E.2d 521; 50 Am. Jur. 2d *Libel & Slander* sec. 233 at 746 (1970)), then statements made therein cannot form the basis of a defamation action even if it is subsequently determined that the court acted erroneously or without jurisdiction.

Inasmuch as no appellate court in this State has yet determined whether a civil RICO claim is exclusively Federal, the circuit court had at least color of jurisdiction over the subject matter and, in fact, assumed it. In point of fact, the trial court so ruled when it denied the defendants' motion to dismiss count IV based upon lack of jurisdiction. Therefore, we hold that the absolute privilege may not be defeated in this matter.

■ Finally, defendants contend that granting an absolute privilege here will deprive them of a remedy at law for an injury to their reputation in violation of article I, section 12, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 12). That provision of our Constitution reads in full:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, sec. 12.

Defendants' contention, however, is unsupported by case law. Persons defamed in pleadings or trial testimony may be left without legal redress, even if their reputations are damaged, because of the public policy favoring free and open administration of justice. *Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 465 N.E.2d 1059; *Byars v. Kolodziej* (1977), 48 Ill. App. 3d 1015, 363 N.E.2d 628; *Surace v. Wuliger* (1986), 25 Ohio St. 3d 229, 495 N.E.2d 939; see W. Prosser, Torts sec. 114, at 776-77 (4th ed. 1971).

Moreover, it has been repeatedly held that article I, section 12, and its predecessors (Ill. Const. 1870, art. II, sec. 19; Ill. Const. 1848, art. XIII, sec. 12; Ill. Const. 1818, art. VIII, sec. 12) represent an expression of a philosophy rather than a mandate that a "certain remedy" be provided in any specific form. (*International Administrators, Inc. v. Life Insurance Co. of North America* (7th Cir. 1985), 753 F.2d 1373; *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659; *Costello v. Unarco Industries, Inc.* (1984), 129 Ill. App.

3d 736, 473 N.E.2d 96; *Koskela v. Martin* (1980), 91 Ill. App. 3d 568, 414 N.E.2d 1148; *Adams v. City of Peoria* (1979), 77 Ill. App. 3d 683, 396 N.E.2d 572; *Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 381 N.E.2d 1367, *cert. denied* (1979), 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 53; *Pantone v. Demos* (1978), 59 Ill. App. 3d 328, 375 N.E.2d 480.) Moreover, in *Nolin v. Nolin* (1966), 68 Ill. App. 2d 54, 215 N.E.2d 21, the court, while upholding an absolute privilege for statements made in a judicial proceeding, held that the prior constitutional provision (Ill. Const. 1870, art. II, sec. 19) has never been interpreted to abolish immunities extended for the protection of a recognized public interest.

We therefore reject the defendants' argument that granting an absolute privilege in favor of pleadings offends the Illinois Constitution in this regard.

Based upon the foregoing analysis, then, we answer the question certified to us in the affirmative, and we reverse and remand to the circuit court of Sangamon County for proceedings consistent with this opinion.

Reversed and remanded.

GREEN and SPITZ, JJ., concur.