EILEEN DE VIVO, PLAINTIFF, v. MICHAEL ASCHER, JOHN DOE I (A FICTITIOUS NAME), JOHN DOE II (A FICTITIOUS NAME), JANE DOE I (A FICTITIOUS NAME), AND JANE DOE II, (A FICTITIOUS NAME), DEFENDANTS.

Superior Court of New Jersey
Law Division Somerset County

Decided July 17, 1987.

*James A. Mella,* Esquire for plaintiff DeVivo (*Weiseman, Sherman & Mella,* attorneys)

*Stephen L. Hopkins,* Esquire for defendant Ascher (*Frederick W. Stevens,* attorney)

ARNOLD, P.J.Cv.

In this libel action plaintiff alleges that the defendant, a lawyer, defamed her when he wrote a letter to counsel for a third party, Johnson & Johnson, and accused plaintiff of "skimming" funds from a Johnson & Johnson account. The defendant has moved for summary judgment arguing that the letter was written in the course of judicial proceedings so that defendant enjoys an absolute privilege. The motion raises the novel issue of whether a letter written to a third party regarding a matter relevant to pending litigation is absolutely privileged when the third party is not a party to that litigation.

Plaintiff, Eileen DeVivo, was an employee of Triangle Travel. In October 1984 Triangle Travel brought suit against Ms. DeVivo. Triangle Travel was represented in that action by Michael Ascher, Esq., the defendant in the instant action. Triangle Travel's complaint alleged that Ms. DeVivo had:

1) unlawfully and without authority withdrawn $4,516.19 from Triangle Travel's checking account;

2) removed Triangle Travel's business records and altered them;

3) diverted customers from Triangle Travel;

4) accepted employment with another travel agency with the intent to interfere with Triangle Travel's economic advantage;

5) breached a fiduciary duty owed Triangle Travel;

6) damaged Triangle Travel's reputation, and

7) diverted Triangle Travel's customers and accounts to herself.

Ms. DeVivo in her answer to Triangle Travel's complaint filed a counterclaim alleging that she was owed $4,516.19 for unpaid commissions and salary. Subsequently her lawyer wrote a letter to Mr. Ascher detailing the source of commissions claimed to be due Ms. DeVivo. Her lawyer asserted that $7,695.00 in commissions had been earned by Triangle Travel on a Johnson & Johnson account, that Ms. DeVivo was entitled to half, or $3,829.99, and that she was also owed $711.38 in commissions on other accounts. Although these sums totaled $4,541.37, her lawyer wrote Mr. Ascher that she was willing to accept $4,516.19 in full payment.

Triangle Travel, represented by Michael Ascher, Esq., also brought an action against Ms. DeVivo in the Chancery Division. In that action Triangle Travel sought, among other things, the return of certain business records. In support of that action, Julie Gilsenan, a principal of Triangle Travel, submitted a certification dated November 11, 1984, in which she stated that Ms. DeVivo had altered Triangle Travel's records of the Johnson & Johnson account.

During the course of the *Triangle Travel v. DeVivo* litigation, Triangle Travel's lawyer, Michael Ascher, subpoenaed certain records from Johnson & Johnson. Johnson & Johnson responded to the subpoena by way of a letter dated February 5, 1985. In that letter, signed by general counsel for Johnson & Johnson, Robert Trainor, Esq., Johnson & Johnson claimed that Triangle Travel owed Johnson & Johnson $7,749.82. That money, it was alleged, was a credit due Johnson & Johnson for travel plans which had been cancelled or not used. By letter dated June 12, 1985, Mr. Ascher responded to Mr. Trainor's request. In that letter Mr. Ascher denied that Triangle Travel owed Johnson & Johnson money. His denial was based on an

explanation that Ms. DeVivo had altered the Johnson & John-
son account records and he reasoned that she and a Johnson &
Johnson employee were engaged in a "skimming" operation to
the detriment of both Triangle Travel and Johnson & Johnson.
It is Mr. Ascher's allegation of "skimming" which forms the
basis for Ms. DeVivo's present cause of action alleging def-
amation.  The defendant now moves for summary judgment
arguing that the statement by Ascher was absolutely privi-
leged.

In support of the motion for summary judgment, the defend-
ant refers this court to the basic rule with regard to determin-
ing whether an absolute privilege applies.  That rule is found in
*Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 *N.J.* 552,
558 (1955) where the court stated that "[t]he most noteworthy
illustration of the absolute privilege or immunity is that afford-
ed in judicial proceedings where judges, attorneys, witnesses,
parties, and jurors are fully protected against defamation ac-
tions based on utterances made in the course of the judicial
proceedings and having some relation thereto."  The defendant
argues that the June 12, 1985, letter at issue had a definite
relation to the underlying judicial proceeding, *Triangle Travel
v. DeVivo.*  According to the defendant, the letter made refer-
ence to certain irregularities in the Johnson & Johnson account,
which Ms. DeVivo was handling when she worked for Triangle
Travel.  In addition, the defendant points out that the *Triangle
Travel v. DeVivo* litigation involved an allegation that DeVivo
had altered Johnson & Johnson account records and an allega-
tion that Ms. DeVivo improperly converted funds from Triangle
Travel.  The defendant also highlights the broad and liberal
scope our courts have given the relevancy requirement for the
establishment of an absolute privilege.  *See Thourot v. Hart-
nett,* 56 *N.J.Super.* 306, 308 (App.Div.1959).

In opposition to the motion, the plaintiff makes two points.
First, plaintiff argues that the subject matter of the defam-
atory letter bore no relationship whatsoever to the pending
litigation.  According to the plaintiff, the letter was written in

an attempt to negotiate a sum due Johnson & Johnson by Triangle Travel. Furthermore plaintiff argues that nowhere in the underlying litigation was there a direct claim that DeVivo was stealing money from the Johnson & Johnson account. Plaintiff notes that Julie Gilsenan testified, during a May 15, 1987, deposition taken as part of pretrial discovery in the instant action, that she never formed an opinion that DeVivo was cheating her of money from the Johnson & Johnson account. Therefore, the plaintiff concludes, that there was no relationship between the allegedly defamatory letter written by defendant and the *Triangle Travel v. DeVivo* actions. Second, plaintiff argues that defendant's letter of June 12, 1985, was not written in the course of a judicial proceeding. Plaintiff notes that there was no litigation pending between Triangle Travel and Johnson & Johnson, and that Julie Gilsenan testified during her deposition that Triangle Travel did not dispute Johnson & Johnson's claim for funds. The plaintiff then concludes that the motion for summary judgment must be denied because the defendant has not come within the requirements necessary to establish an absolute privilege for the allegedly defamatory letter.

It is this court's opinion that the June 12, 1985, letter by Michael Ascher, Esq. is cloaked with an absolute privilege. While this court was unable to find any case which involved the exact factual pattern and issue now before this court, this court is satisfied that the law, and the policy behind the law, compels this result. Accordingly, the defendant's motion for summary judgment is granted. This court's reasoning and analysis is as follows.

The test for determining whether an absolute privilege applies is described by our Supreme Court in *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 *N.J.* 552, 558 (1955) as follows: "[j]udges, attorneys, witnesses, parties and jurors are fully protected against defamation actions based on utterances made in the course of the judicial proceedings and having some

relation thereto." This test parallels that of the *Restatement of Torts*, which reads in relevant part as follows:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding [*sic*]. [*Restatement (Second) of Torts* § 586 (1977).]

Accordingly, a two-part test exists which must be satisfied before the absolute privilege will apply. The utterance must: 1) have some relation to the judicial proceeding and, 2) must be made in the course of a judicial proceeding. For the purposes of this decision, the part of the test which will be examined first is the "relation" to the proceedings part. This part of the test was thoroughly discussed in *Thourot v. Hartnett*, 56 *N.J.Super.* 306, 308–309 (App.Div.1959). In that decision it was explained that the test for relevancy is very liberal. Specifically, that court remarked as follows:

The pertinency thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to subject matter of the action. (citation omitted) As to the degree of relevance needed to invoke the absolute shield of this immunity, the courts are most liberal.... [*Thourot*, 56 *N.J.Super.* at 308.]

That court also stated that "[m]atter, to which the privilege does not extend, must be so wanting in relation to the subject matter of controversy as that no reasonable man can doubt its irrelevancy and impropriety." *Ibid.* (citations omitted). This liberal interpretation is also found in the *Restatement* which goes so far as to state that even an unwarranted inference from the evidence is insufficient to deprive an attorney of the privilege. *Restatement (Second) of Torts* § 586 comment c (1977).

Applying these principles to the facts of this case this court concludes that the letter at issue was sufficiently relevant to the *Triangle Travel v. DeVivo* proceedings to satisfy the "relation" part of the two-part absolute privilege test. The letter at issue was written in response to Johnson & Johnson's allegation that Triangle Travel owed Johnson & Johnson

$7,749.82. In the letter Mr. Ascher stated that the exact sum of money sought by Johnson & Johnson was in dispute due to what he called a "skimming" operation by Ms. DeVivo and/or a Johnson & Johnson employee with regard to Johnson & Johnson's account at Triangle Travel. This is related to the *Triangle Travel v. DeVivo* litigation because those actions involved an allegation that Ms. DeVivo altered the records of the Johnson & Johnson account at Triangle Travel, an allegation that Ms. DeVivo wrongfully converted certain funds from Triangle Travel, and a counterclaim by Ms. DeVivo that Triangle Travel owed her half the commissions earned by Triangle Travel on the Johnson and Johnson account. Furthermore, Julie Gilsenan, by way of certification dated November 5, 1984, acknowledged that she could not respond to Johnson & Johnson's request for monies because of the allegedly altered Johnson & Johnson account records. Thus, Mr. Ascher's conclusion that Ms. DeVivo's actions impacted on the Johnson & Johnson claim for funds is certainly related to the *Triangle Travel v. DeVivo* proceeding. In fact, at the end of the letter at issue Mr. Ascher went so far as to point out his belief that the two matters were related when he stated the following: "Since I feel that this matter is somewhat entwined with the pending litigation against DeVivo, I would ask that you contact me immediately since a trial date in the pending matter is imminent. I would like to dispose of all matters at once." Given the above factual circumstances, and the flexible standard developed for determining if something has "some relation" to an underlying proceeding, the first part of the test for determining whether an absolute privilege exists is satisfied.

The second part of the absolute privilege test requires that the utterance at issue occur "in the course of a judicial proceeding." *Rainier's Dairies,* 19 *N.J.* at 558. The policy behind this requirement is that the judicial controls and supervision which surround a judicial proceeding, such as the formal requirements of notice and hearing, afford a measure of protection against the risk of defamation. *Id.* at 562; *see also Petty v. General*

*Accident Fire and Life Assurance Corp.*, 365 *F.2d* 419, 421 (3d Cir.1966). Therefore, the further the utterance at issue is from a formal judicial proceeding under oath or before a judge, the less this policy is satisfied. *See Devlin v. Greiner*, 147 *N.J.Super.* 446, 455 (Law Div.1977). Nevertheless, the phrase "in the course of a judicial proceeding" has been held to extend beyond statements made by a witness while under oath to statements or communications in connection with a judicial proceeding. *Middlesex Concrete Products and Excavating Corp. v. The Carteret Industrial Ass'n.*, 68 *N.J.Super.* 85, 92 (App.Div. 1961). Furthermore, the *Restatement* gives a broad interpretation to the phrase "in the course of a judicial proceeding" by taking the position that "[t]he publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding." *Restatement (Second) of Torts*, § 586 comment a (1977); *see generally* Annotation, *Libel and slander: attorney's statements to parties other than alleged defamed party or its agents, in course of extrajudicial investigation or preparation relating to pending or anticipated civil litigation as privileged*, 23 *A.L.R.* 4th 932 (1983); Annotation, *Libel and slander: out-of-court communications between attorneys made preparatory to, or in the course or aftermath of, civil judicial proceedings as privileged*, 36 *A.L.R.* 3d 1328 (1971).

In addition to the above stated policy behind the second part of the absolute privilege test there is also the policy that a lawyer should have the utmost freedom of communication to secure justice for his or her client. This policy was enunciated by an Illinois court in *Libco Corp. v. Adams*, 100 *Ill.App.*3d 314, 55 *Ill.Dec.* 805, 426 *N.E.*2d 1130 (1981), a case whose facts are similar to the instant matter. In *Libco*, plaintiff brought a defamation action against a lawyer, defendant Ware Adams, for an allegedly libelous statement contained in a letter written by Adams to another lawyer, James Nesland. When the letter

was written, both Adams and Nesland were involved in separate actions against a common defendant. In preparing for litigation Adams wrote to Nesland regarding trial strategies and theories. The court held that the "absolute privilege protects anything said or written in a legal proceeding" as long as it pertains to proposed or pending litigation and ruled that the letter written by Adams came within the absolute privilege. *Libco*, 55 *Ill.Dec.* 806–807, 426 *N.E.*2d at 1131–1132; *see also Defend v. Lascelles*, 149 *Ill.App.*3d 630, 102 *Ill.Dec.* 819, 821, 500 *N.E.*2d 712, 714 (Ill.App.1986).

It thus appears to this court that the decision whether an utterance was made "in the course of a judicial proceeding" must consider two things, i.e., (1) How far removed from a formal judicial proceeding the utterance was made, and (2) The freedom of communication that a lawyer should have to secure justice for his or her client.

Because the letter at issue was written in response to a letter from counsel for Johnson and Johnson, who was in turn responding to a subpoena wherein Triangle Travel sought Johnson and Johnson's records for use in the *Triangle Travel v. DeVivo* litigation, it is this court's opinion that judicial controls/safeguards are not so far removed as to strip the defendant of the absolute privilege. The defendant's letter is certainly no more removed from judicial controls/safeguards than was the consultant's report held to have been made in the course of a judicial proceeding in *Middlesex Concrete Products and Excavating Corp. v. Carteret Industrial Ass'n*, 68 *N.J.Super.* 85 (App.Div.1961).

Furthermore, the defendant's letter was so intertwined with his representation of Triangle Travel in its actions against DeVivo, that the letter can be considered an effort by the defendant to secure justice for his client. Therefore, it is this court's opinion that the letter was published "in the course of a judicial proceeding."

Accordingly, having satisfied both parts of the test for application of the absolute privilege, the defendant's motion is granted.