William B. STARNES, Plaintiff–Appellant,

v.

CAPITAL CITIES MEDIA, INCORPORATED, doing business as Belleville News–Democrat, Marilyn Vise, Greg Edwards, et al., Defendants–Appellees.

No. 94–1958.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1994.

Decided Nov. 18, 1994.

David M. Duree (argued), Robert L. Carter, Reinert, Duree & Crane, St. Louis, MO, for William B. Starnes.

Frederick J. Hess, U.S. Atty., Robert B. Hoemeke, Joseph E. Martineau (argued), Yvette M. Guerra, Lewis, Rice & Fingersh, St. Louis, MO, for Capital Cities Media, Inc., Marilyn Vise, Greg Edwards.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and WILL, District Judge.*

BAUER, Circuit Judge.

William Starnes filed this action under 42 U.S.C. § 1983 alleging that the defendants, acting under color of state law, violated his constitutional right of privacy. The district court dismissed the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Starnes appeals, and we affirm.

I.

Rule 8.3(b) of the Illinois Rules of Professional Conduct requires lawyers who know of a judge's violation of the Code of Judicial Conduct to report their knowledge to the "appropriate authority" unless this information is protected as a confidence. Acting pursuant to this edict, attorney Amiel Cueto, on two occasions in 1991, sent letters to the Illinois Judicial Inquiry Board ("Board") accusing Starnes, at the time a judge on the Illinois Circuit Court, of committing several felonies and misdemeanors and of various sexual escapades in public places. After its investigation, the Board declined to file a complaint against Starnes. As is customary, details of the charges and the ensuing investigation remained confidential.

A year later, Starnes became involved in divorce proceedings. When his now ex-wife retained Cueto as her attorney, Starnes filed a motion to disqualify Cueto from the case because of Cueto's previous accusations. In his response to the motion, Cueto attached copies of the two letters that he had previously sent to the Board.

Two months later, in July of 1992, the Belleville News–Democrat, a daily newspaper published and circulated in St. Clair County, Illinois, printed several articles about the no-longer confidential allegations contained in the letters. The following year,

_____

* The Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois, is sitting by designation.

Starnes filed a defamation action against the newspaper and its editors and against Cueto in the Circuit Court of St. Clair County.

■ Illinois law confers an absolute privilege upon statements made in the course of judicial proceedings if those statements are relevant to the controversy. *Defend v. Lascelles*, 149 Ill.App.3d 630, 102 Ill.Dec. 819, 825, 500 N.E.2d 712, 718 (1986). Finding that the contents of the letters were indeed relevant to the issue of Cueto's representation in the divorce case, Judge Kardis held that the privilege applied, and he dismissed the defamation claim.

Subsequently, Starnes filed this civil rights action charging Cueto, the newspaper, and various newspaper employees, with unlawfully depriving him of his constitutional right of privacy. His complaint alleged that Cueto attached the letters to his motion so that he could publicize the otherwise confidential allegations contained therein. Finding no conceivable set of facts under which the defendants could have been acting under color of state law, the district court granted the defendants' motion to dismiss.

## II.

■ We review the dismissal of Starnes's complaint *de novo*. In so doing, we assume all well-pleaded allegations to be true, and we draw all inferences in Starnes's favor. *Wiemerslage v. Maine Township High Sch.*, 29 F.3d 1149, 1151 (7th Cir.1994).

To state a valid cause of action under 42 U.S.C. § 1983, a plaintiff must allege first that the defendant has deprived the plaintiff of a right secured by the Constitution and laws of the United States, and second, that the defendant acted under color of state law in making that deprivation. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The district court's dismissal was based on the second of these criteria, and so we focus our attention on the question of whether the defendants' actions can be fairly attributed to the state.

■ Starnes alleges in his complaint that Cueto attached the letters to his pleadings so that he could later publicize the accusations contained within them without fear of any legal action against him. Starnes claims also that the newspaper conspired with Cueto in this endeavor. Though the complaint fails to name any state officials as defendants, this omission is not necessarily fatal in a § 1983 claim. A complaint may state a valid cause of action against private defendants in several situations, two of which are relevant here. The first situation arises when the state has so implicated itself in the defendant's action that the state has in effect compelled the action. *Adickes*, 398 U.S. at 170, 90 S.Ct. at 1615. Alternatively, a private party can be liable under § 1983 if the defendant is alleged to have wilfully participated in joint action with state officials. *Id.* at 152, 90 S.Ct. at 1605.

Starnes claims that this case presents examples of both situations. He contends, first, that the "under color of state law" requirement has been satisfied because Cueto was acting pursuant to state law, and therefore, the state endorsed his act. He also alleges that because Judge Kardis, a state actor, found that the letters were protected from a defamation suit, Cueto can be held responsible for their subsequent disclosure under the "joint action" theory. After careful consideration of each argument, we conclude that the defendants' actions cannot be fairly attributed to the state.

In *Adickes*, the Supreme Court held that a private party's wrongful act may be attributed to the state for purposes of the Fourteenth Amendment if the state has somehow compelled the act. *Adickes*, 398 U.S. at 170, 90 S.Ct. at 1615. Specifically, the Court found that an allegation of a state-enforced custom of segregating races in public restaurants stated a valid cause of action against the restaurant. Underlying this rule is the rationale that if the state commands the performance of an unconstitutional practice, the fact that the practice is carried out by a private entity rather than a public entity should not preclude liability. *Id.*

The Court refined this principle in *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978), in which the Court made clear that a state legislature's failure to regulate an action does not mean that the state has compelled the challenged action. *Flagg Brothers* involved a New York statute which permitted a bailee

of goods to sell those goods if after a certain period of time, the bailor had not paid for the bailee's services. When the bailee took advantage of this statute, the bailor sued the bailee under § 1983, alleging that by enacting the statute, the state had compelled the deprivation of his property.

The Court rejected this argument, holding that a statute that simply provided circumstances under which courts would not interfere with a purely private sale, was not equivalent to the state compelling, or even encouraging, an unconstitutional act. *Id.* at 166, 98 S.Ct. at 1738. The Court analogized the statute in question to a statute of limitations. Both statutes simply describe the conditions under which a court will, if asked, enforce a private transaction. *Id.* In neither instance does the state's limited function render the underlying transaction an act under color of state law.

Starnes's claim that Cueto was acting under color of state law because he was availing himself of a state law privilege is similar to the argument rejected by the Court in *Flagg Brothers.* It rests on the premise that by failing to legislate away the privilege, the state accepted the privilege, and concludes that by accepting the privilege, the state was tacitly encouraging private citizens to use it to engage in unconstitutional breaches of privacy. This argument fails for several reasons. First, as the Court stated in *Flagg Brothers,* any action or inaction by the legislature does not automatically transform a wholly private action into state action. If it did, then any private cause of action which involved deprivations of property could also support a § 1983 claim. Such a result would be completely contrary to the Fourteenth Amendment's distinction between public and private acts. *Flagg Brothers,* 436 U.S. at 165, 98 S.Ct. at 1738. The "state compulsion" theory requires a higher degree of state involvement than is present here.

■ Moreover, the legislature's endorsement of a given legal rule does not logically translate into its endorsement of unconstitutional applications of that rule. Hence, even an expansive definition of state action would not dictate a different result in this case because the privilege at issue only attaches if the allegedly defamatory allegations are relevant to the underlying controversy. Con-

trary to Starnes's apparent suggestion, the privilege is not a "safe harbor" for those who wish to freely defame others. *Defend v. Lascelles,* 149 Ill.App.3d 630, 102 Ill.Dec. 819, 825–26, 500 N.E.2d 712, 718–19 (1986). To the extent that the state has acted, it has not encouraged parties to disclose any more than is necessary in the litigation. At best, Starnes alleges that Cueto misused the privilege. Misuse of a state law is not, however, state action for purposes of the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982).

■ Nor does Judge Kardis's enforcement of the privilege supply Starnes's complaint with adequate state action. The simple denial of judicial relief does not constitute state encouragement. *Flagg Brothers,* 436 U.S. at 165, 98 S.Ct. at 1738. Although not completely clear from his complaint, Starnes appears to argue that the defendants might be liable under a "joint action" theory. Under this theory, a private defendant may said to be acting under color of state law if that defendant collaborates with a state official in denying the plaintiff his constitutional rights. *Cunningham v. Southlake Center for Mental Health,* 924 F.2d 106, 107 (7th Cir.1991). In his brief, Starnes intimates that the defendants colluded with Judge Kardis in this deprivation.

Starnes's attempt to link the defendants' actions to the state through Judge Kardis is unavailing. Though Judge Kardis did enforce the privilege, his role in the proceeding is not sufficient to provide Starnes with the state action "hook" he needs. It is necessary to this charge that the "public and private actors share a common and unconstitutional goal." *Cunningham,* 924 F.2d at 107. To maintain a valid § 1983 claim against these private defendants then, Starnes must allege the existence of some concerted effort between Judge Kardis and them. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1353 (7th Cir.1985). The absence of such an allegation made it appropriate for the district court to dismiss this complaint.

## III.

Even when construed in a light most favorable to him, Starnes's complaint reveals no basis for concluding that the state implicated itself in the newspaper's publication of Cueto's letters. Consequently, the district court's dismissal of the case for failure to state a claim is

AFFIRMED.